Sharon BLOSS, Respondent,

v.

PLASTIC ENTERPRISES & Hartford Ins. Co., Appellants.

No. WD 58217.

Missouri Court of Appeals,
Western District.

Submitted Oct. 11, 2000.

Decided Dec. 5, 2000.

Thomas R. Hill, Kansas City, for Appellant.

Eric T. Lanham, Kansas City, for Respondent.

Before SMART, P.J.; ELLIS and LAURA DENVIR STITH, JJ.

PER CURIAM:

Appellants, Plastic Enterprises ("Plastic") and Hartford Insurance Company ("Hartford"), appeal an award granted to Plastic's employee Sharon Bloss in her worker's compensation claim against the company. The administrative law judge ("ALJ") granted Ms. Bloss the award on April 1, 1999, and it was upheld on an appeal to the Missouri Labor and Industrial Relations Commission ("Commission"). The appellants argue that the Commission erred because Ms. Bloss was awarded compensation for a mental disorder which predated her work-related accident and which is attributable to circumstances unrelated to work. We affirm the Commission's award of compensation.

### Factual Background

We review the facts in the light most favorable to the Commission's decision. *West v. Posten Constr. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991). On March 7, 1994, Sharon Bloss, age forty three, slipped and fell at her place of employment, Plastic Enterprises, where she was employed as a "lead person machine oper-

ator." Ms. Bloss slipped on oil that had been spilled onto the floor. As she fell, she lost her grasp on the machine part she was carrying, and fell onto the machine part, landing on it with her lower left back. Ms. Bloss gave notice of the accident to her employer on the date that it occurred and signed an "Employee Accident Statement" on that day, as well. Ms. Bloss required immediate medical attention for injuries she sustained in the accident, and Plastic sent her to Dr. Amir Hemaya, who examined her on the date of the accident. The doctor diagnosed a contusion of the posterior hip. He prescribed medication and returned her to full-duty work. The next morning, however, Ms. Bloss experienced severe low back pain. She went back to work on March 11, 1994, performing her regular duty tasks, which included much physical labor. When Ms. Bloss returned to Dr. Hemaya on March 14, 1994, she told him of pain and stinging in her lower back and thigh. Again, on March 22, 1994, she complained of continuing back and leg pain to Dr. Hemaya.

In a follow-up examination on April 4, 1994 with Dr. Hemaya, Ms. Bloss reported back discomfort as well as pain over the anterior and posterior thigh. The doctor referred Ms. Bloss to Dr. Tillema, an orthopedic surgeon, for evaluation. Dr. Tillema examined her on April 13, 1994, and concluded that she had experienced a "strain and contusion of the low back" in the earlier fall at work. Dr. Tillema prescribed a course of physical therapy and conservative medical treatment for her low back, hip, and leg pain, and throughout her treatment she continued to attempt to perform her job, until July of 1994.

In early July of 1994, Ms. Bloss' pain had worsened to the point that she could not get out of bed. She went to see her family physician, Dr. Whitley, who took her off work temporarily. When she returned to work in the middle of July, she was given the job of material handler. She testified that she attempted to continue to work in spite of her severe back pain, which she contends worsened over the months of her employment after her fall.

Ms. Bloss was examined and treated by Dr. Tillema for her back pain on several occasions between April 13, 1994 and November 9, 1994, and her condition did not improve; in fact, her pain persisted and worsened during this treatment period. Dr. Tillema believed Ms. Bloss was suffering from some type of "symptom magnification disorder." He did not believe that there was a good chance to assist Ms. Bloss with either pain management or a work hardening program. He therefore imposed permanent lifting, pulling, and bending restrictions, rated her physical disability as a twelve-percent partial, permanent disability, and released her from his care. Also in 1994, Ms. Bloss was examined by a company health care provider who diagnosed lumbar radiculopathy, recommended lumbar steroid epidural injections, and limited Ms. Bloss to light duty work assignments.

Ms. Bloss returned to her family physician, Dr. Whitley, as well. He restricted her to light-duty work from July of 1994 to early January of 1995. On January 6, 1995, Dr. Whitley determined that Ms. Bloss could not work "because of the continuing pain and the effects of the injury" and he removed her from employment indefinitely. Ms. Bloss testified that her back and leg pain arose after and because of the March 7, 1994 workplace accident and that her condition worsened to the point that in January of 1995 she was unable to work or perform the basic activities of daily living. Her husband's testimony before the ALJ verified her testimony with regard to her inability to perform basic daily activities.

Dr. Whitley has continued to treat Ms. Bloss, whose condition has not improved since her last date of employment. Dr. Whitley testified that after June 13, 1995, her pain had become a "chronic situation", that she is in constant pain as a result of the March 7, 1994 back injury, that her symptoms have been consistent over the

course of his treatment, and that he sees no evidence of "malingering". The doctor testified that within a reasonable degree of medical certainty Ms. Bloss is "one hundred percent disabled at this time with the present set of circumstances." Dr. Gregory L. Pucci, a neurosurgeon who examined Ms. Bloss in February of 1996, confirmed Dr. Whitley's assessment. After being found to be permanently disabled from gainful employment by the Social Security Administration, Ms. Bloss began receiving Social Security disability benefits in April of 1997.

The testimony of numerous experts was presented to the ALJ at Ms. Bloss' hearing on behalf of both the appellants and Ms. Bloss. There was disagreement among the experts about whether Ms. Bloss' condition could benefit from surgical intervention. The ALJ appointed Dr. Edward Prostic, an orthopedic surgeon, to perform an independent medical examination of Ms. Bloss and to render appropriate medical opinions based on that examination and based on his review of the pertinent medical records. Dr. Prostic expressed the opinion that Ms. Bloss had sustained a work-related injury to her back in the March 7, 1994, fall and that she now suffered from a symptom magnification disorder. He stated that he did not believe that she would respond favorably to surgery. He stated that her symptom magnification disorder resulted from psychological reasons and was not motivated by a desire for financial gain. The doctor explained that this disorder is psychologically based and causes the brain to amplify pain signals, which intensifies the experience of pain. She has an actual, objective basis for her pain, which is increased by the psychological overlay. As a result of this, Dr. Prostic opined that Ms. Bloss was totally disabled from gainful employment at the time he examined her. That Ms. Bloss' chronic pain disorder has a psychological dimension has been acknowledged by both treating and examining doctors,

including Dr. Tillema, Dr. Prostic, and Dr. Williamson (another orthopedic surgeon who examined Ms. Bloss).

Dr. Montgomery, a behavioral pain management specialist, testified that Ms. Bloss' psychological barriers would not permit her to benefit from psychotherapy or rehabilitation. Other psychologists who served as expert witnesses in this case concurred in this opinion. The following doctors expressed the opinion that Ms. Bloss is permanently disabled from gainful employment as a direct result of the physical trauma sustained on March 7, 1994, and of the psychological condition resulting directly therefrom: Dr. Butts (a clinical psychologist with extensive experience in pain disorders), Dr. Whitley, Dr. Prostic, and Dr. Pucci. Additionally, Lane Sanders, the only vocational rehabilitation expert to testify, testified that Ms. Bloss could not compete in the open labor market at this time and is unemployable.

The ALJ found Ms. Bloss to be permanently and totally disabled, pursuant to § 287.200, RSMo 1994,[1] and awarded her compensation benefits accordingly, finding that the "preponderance of the credible medical evidence supports a finding of medical causation and, specifically, attribution of Claimant's low back pain and chronic pain/symptom magnification disorder to the March 7, 1994, work-related accident." The ALJ found also that the overwhelming weight of the medical evidence demonstrated that the claimant has experienced a chronic pain/symptom magnification disorder as a result of the March 7, 1994, accident; that although the claimant may have had a psychological profile making her prone to pain hypersensitivity, she had not previously experienced any episode of chronic pain disorder; and that it was more probable than not that the fall at her workplace was the causal event for the pain disorder.

On appeal by Ms. Bloss' employer, Plastic, the Commission affirmed the findings

1. All statutory references are to Revised Statutes of Missouri 1994, unless otherwise noted.

and award of the ALJ on January 7, 2000. Plastic and its insurer, Hartford Insurance Company, appealed that decision to this court.

## Standard of Review

The statute that governs the standard of review to be applied by this court in an appeal of a workers' compensation award, § 287.495.1, RSMo Cum.Supp.1998, states:

> ... The court, on appeal, *shall review only questions of law* and *may modify, reverse, remand for rehearing, or set aside* the award *upon any of the following grounds* and no other:
>
> (1) That the commission *acted without or in excess of its powers;*
>
> (2) That the *award was procured by fraud;*
>
> (3) That the *facts found by the commission do not support the award;*
>
> (4) That there *was not sufficient competent evidence* in the record *to warrant the making of the award.* (Emphasis added.)

 In reviewing a workers' compensation award, we review the findings of the

Commission and not those of the ALJ. *Kaderly v. Race Bros. Farm Supply,* 993 S.W.2d 512, 514 (Mo.App.1999). The complete process to be applied when reviewing an award of the Commission can be found in detail in *Davis v. Research Medical Center,* 903 S.W.2d 557 (Mo.App.1995).[2] The *Davis* process can be summarized as follows: The reviewing court first examines the whole record, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the award, in order to determine if the record contains sufficient competent and substantial evidence to support the award. *Id.* at 571. If the court finds sufficient competent and substantial evidence to support the award, it then determines whether or not the award is against the overwhelming weight of the evidence. *Id.*

## Analysis

The appellants present seven points on appeal, the first six of which can be addressed under the two major categories: (1) Back Injury and (2) Symptom Magnification Disorder.[3]

---

**2.** That procedure was explained by the *Davis* court:

> ... The reviewing court may not substitute its judgment on the evidence for that of the Commission. The weight of the evidence and the credibility of witnesses are ultimately for the Commission. The court applies a two-step process designed to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it. In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect

of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. In doing so, it takes into consideration the credibility determinations of the Commission....

*Davis,* 903 S.W.2d at 571 (emphasis added).

**3.** Appellants' seventh point makes the less significant argument that the Commission erred in finding that appellants failed to timely answer Ms. Bloss' amended claim for compensation because the issue was not raised in a timely fashion and because the law mandates that the issue of causation cannot be established by default. This claim is not significant because the Commission clearly stated that this issue did not enter into its decision to award disability compensation to Ms. Bloss. The Commission determined that Ms. Bloss' psychologically-related chronic pain disorder, rendering her totally and permanently disabled, was caused by her fall at work, and the Commission stated that this finding of causation "is supported by the record as a whole and is not dependent upon a finding that the employer/insurer admitted a causal connection by failing to file a timely answer."

▮▮▮ (1) *Back Injury:* The appellants contend that the claimant's back injury did not "arise out of and in the course of her employment," as required by § 287.020.3 [4] RSMo 1994, in that her fall was not a "substantial factor" (§ 287.020.3(2)(a); *Cahall v. Cahall,* 963 S.W.2d 368, 372 (Mo. App.1998)) with regard to the cause of her injury, since she landed on her left buttock, according to appellants, and not on her back. An injury is compensable only if it is clearly work-related, and an injury is "clearly work related" only if work was a "substantial factor" in the cause of the injury and the resulting medical condition. § 287.020.2; *Cahall,* 963 S.W.2d at 372. An injury is not compensable, however, if work was merely a "triggering or precipitating factor." § 287.020.2; *Cahall,* 963 S.W.2d at 372.

▮▮▮ On the other hand, "[a]wards for injuries 'triggered' or 'precipitated' by work are nonetheless proper *if* the employee shows that the work is a 'substantial factor' in the cause of the injury." *Kasl v. Bristol Care, Inc.,* 984 S.W.2d 852, 853 (Mo. banc 1999). A work-related accident can be both a triggering event and a substantial factor. *Cahall,* 963 S.W.2d at 372. Determinations with regard to causation and work-relatedness are questions of fact to be ruled upon by the Commission, *Id.,* and the reviewing court may not substitute its judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *See Kaderly,* 993 S.W.2d at 514 (*citing Davis,* 903 S.W.2d at 571).

▮▮▮ The appellants also contend, in their first point, that the Commission erred in awarding the benefits, because case law mandates that the Commission cannot cast aside "competent, substantial, and undisputed testimony" (*Garibay v. Treasurer of Missouri,* 930 S.W.2d 57, 61 (Mo.App.1996)) and, according to the appellants, the Commission did so with the expert testimony of Dr. Hemaya and Dr. Tillema. The Commission is not *required* to accept competent substantial evidence as true, since the Commission is the sole judge of the credibility of the witnesses. *Garibay,* 930 S.W.2d at 61. The Commission "cannot, nevertheless, arbitrarily cast aside competent, substantial, and undisputed testimony of witnesses who are not shown by the record to have been impeached." *Id.* On the other hand, this court will not substitute its interpretation of factual issues for that of the Commission even if it would have made a different determination under the circumstances. *Lakeman v. Treasurer of Missouri,* 923 S.W.2d 499, 501 (Mo.App.1996).

▮▮▮ Ms. Bloss correctly points out that the Commission is to be the sole judge of the credibility of witnesses and that it has "sole discretion to determine the weight to be given expert opinions," citing *Gausling v. United Industries,* 998 S.W.2d 133, 136 (Mo.App.1999). Therefore, as Ms. Bloss convincingly argues, this court must view the evidence in the light most favorable to the Commission's decision and uphold that decision if it is supported by competent and substantial evidence. *Gausling,* 998 S.W.2d at 135–36. She points out, further, that this court may set aside the Commission's findings regarding medical causation and the award itself only if "they are clearly contrary to the overwhelming weight of the evidence." *Id.* at 136. In essence, Ms.

---

4. Section 287.020.3 states:

(1) In this chapter the term "injury" is hereby defined to be an injury which has arisen out of and in the course of employment. The injury must be incidental to and not independent of the relation of employer and employee....

(2) An injury shall be deemed to arise out of and in the course of the employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury; and

(b) It can be seen to have followed as a natural incident of the work; and

(c) It can be fairly traced to the employment as a proximate cause; and

(d) It does not come from a hazard or risk unrelated to the employment....

Bloss argues that the appellants' attempt to show that she did not sustain a lower back injury in the accidental fall is without merit, as the pertinent medical records and expert medical testimony discloses. The Commission found her argument convincing, and because we do not perceive that such a finding is "clearly contrary to the overwhelming weight of the evidence," we affirm the Commission's judgment on this point.

■■■■ (2) *Symptom Magnification Disorder:* The appellants' second overriding claim is that the claimant's symptom magnification disorder did not "arise out of and in the course of her employment" because it was not a "substantial factor" with regard to the cause of her mental injury. *Kasl,* 984 S.W.2d at 853. To be compensable, an accident must be "clearly work related," which means that the accident must be "unique" to the work. *Id.* at 853. The appellants assert that Ms. Bloss' symptom magnification disorder was not "directly, proximately and substantially" caused by her employment, as required by *Tibbs v. Rowe Furniture Corp.,* 691 S.W.2d 410, 413 (Mo.App.1985), in that her mental condition is a result of her dysfunctional personality which pre-existed the March 7, 1994, slip and fall accident. *Tibbs* points out that "[m]ental conditions are compensable under the Worker's Compensation Law provided they are shown to have been directly and proximately caused by the [work-related] accident," but that such a causal connection must be proven by "clear evidence." *Id.* at 412–13.

The appellants argue, additionally, that the Commission also erred (1) because the law mandates that an objective standard be utilized in mental injury claims (§ 287.120.8 [5]; *Williams v. DePaul Health*

*Center,* 996 S.W.2d 619, 627 (Mo.App. 1999)), and here objective evidence from three behavioral tests show that her mental condition stems from a personality disorder which pre-existed the accident; and (2) because § 287.120.9 [6] and *Williams,* 996 S.W.2d at 629, mandate that a mental injury resulting from a good faith job demotion is not compensable, and, appellants contend, Ms. Bloss' mental disorder began after her job demotion to material handler.

The *Williams* court opined that § 287.120.8 requires that "objective standards and actual events" be used to ascertain whether work-related stress "was extraordinary and unusual." *Williams,* 996 S.W.2d at 627. Unfortunately, as the court noted, the statute "does not clearly set forth what 'objective standards' should be used to discern the 'extraordinary and unusual' nature of an employee's work-related stress." *Id.* However, an injured employee must always show a causal connection between the injury and the employment in order to recover compensation, "and medical causation, not within the common knowledge or experience, must be established by scientific or medical evidence showing the cause and effect relationship between the complained of condition and the asserted cause." *Id.* at 631. Because the Commission may determine what weight it will accord expert testimony on medical causation, "[w]here the right to compensation depends upon which [of] two conflicting medical theories should be accepted, the issue is peculiarly for the Commission's determination." *Id.*

The appellants essentially base all their arguments on and reinforce them with the following factors: The one dissenting commissioner's opinion that claimant's fall was

---

5. Section 287.120.8 states: "Mental injury resulting from work related stress does not arise out of and in the course of the employment, unless it is demonstrated that the stress is work related and was extraordinary and unusual. The amount of work stress shall be measured by objective standards and actual events."

6. Section 287.120.9 states: "A mental injury is not considered to arise out of and in the course of the employment if it resulted from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination or any similar action taken in good faith by the employer."

not the cause of her mental disorder; the claimant's behavioral test results showing a histrionic personality disorder; the claimant's dysfunctional personality as evidenced by alcoholism, drug abuse and hospitalization for mental issues predating the slip and fall accident; the fact that the claimant had been previously released by both Drs. Hemaya and Tillema with no permanent disability and no activity restrictions; and evidence of claimant's anger over her job demotion and her poor coping skills as applied to that anger.

We agree with the Commission's findings that there is no dispute in the record and no argument to the contrary by appellants that Ms. Bloss is now permanently and totally disabled from employment; that she was never disabled from employment prior to her employment with Plastic; that she sustained a physical injury to her lower back region in the course and scope of her employment; that she is suffering from a symptom magnification disorder that arose after the on-the-job accident; and that she experiences disabling pain with both physical and psychological components, which renders her permanently unable to perform any employment.

The ALJ found that the "[c]laimant is a credible witness regarding the nature and extent of her pain symptoms and the physicians whose testimony has been taken concur that Claimant is not a malingerer." The ALJ wrote further: "Although the Claimant's symptoms would be unusual if only a physical injury were involved, the psychological overlay arising naturally and directly therefrom has caused permanent total disability."

Ms. Bloss had never been disabled from gainful employment prior to the slip and fall accident and her work record was exemplary both before and after the accident, regardless of her temporary personal setbacks. Appellants' own witness, Ms. Bloss' supervisor at Plastic, testified that she exercised great efforts in attempting to work through her injuries after the slip and fall accident of March 7, 1994. Ms.

Bloss complains, and we agree, that instead of focusing on her diagnosed psychological impairment, the appellants attempt to paint her as a bad person by pointing to wholly irrelevant evidence of childhood sexual abuse and marital problems that pre-date by fifteen years or more the March 7, 1994, injury and symptoms arising therefrom. Also, appellants point out problems Ms. Bloss has had with substance abuse and depression even though no treating or examining physician has attributed any of her present physical or psychological problems to either substance abuse or a prior menopausal-related depression.

The only evidence presented by appellants with regard to the medical causation of her psychological condition was the testimony of a psychologist (Dr. Haynes) who never met with nor examined her and yet drew conclusions about the origins of her present pain disorder merely through his examination of her medical records. And, yet, he too confirmed that Ms. Bloss does experience or perceive pain. He did not testify to a lack of a causal connection between the slip and fall accident and her present impairment, and he did not allege that she is capable of gainful employment. Dr. Haynes' testimony, according to Ms. Bloss, consisted of mere speculation about possible pre-existing stressors that may have contributed to her condition. The Commission agreed with Ms. Bloss' contentions. We cannot say that the Commission's conclusions were not supported by the evidence.

## Conclusion

 This court may modify, reverse, remand for rehearing, or set aside the award *only* if we find that the Commission acted without or in excess of its powers; that the award was procured by fraud; that the facts found by the Commission do not support the award; or that there was not sufficient competent evidence in the record to warrant the making of the award. "This court can disturb the

Commission's decision only if there is no competent and substantial evidence to support the Commission's award or, in the alternative, such evidence is clearly contrary to the overwhelming weight of the evidence." *Stawizynski v. J.S. Alberici Const. Co.*, 936 S.W.2d 159, 162 (Mo.App. 1996). Bearing these rules of law in mind, we find that the Commission's decision is supported by competent and substantial evidence, and we therefore affirm the Commission's decision and uphold the award of disability benefits to Ms. Bloss.