Betty HIGGINS, Respondent,

v.

THE QUAKER OATS COMPANY, Appellant,

and

Treasurer of Missouri, As Custodian of the Second Injury Fund, Respondent.

No. WD 64978.

Missouri Court of Appeals, Western District.

Nov. 29, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 2006.

Application for Transfer Denied Feb. 28, 2006.

Robert E. Douglass, St. Joseph, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Lasandra Fae Pearl, Office of Attorney General, Kansas City, for Second Injury Fund.

Michael A. Knepper, Kansas City, for Betty Higgins, Respondent.

RONALD R. HOLLIGER, Presiding Judge.

The Quaker Oats Company and Old Republic Insurance Company (together "Employer") appeal the decision of the Labor and Industrial Relations Commission (the "Commission") awarding Betty Higgins ("Employee") benefits for permanent total disability and finding no liability on the

part of the Second Injury Fund. Employer alleges (1) the Commission acted in excess of its authority in hearing a "hybrid" claim comprising cumulative trauma along with two specific instances of back injury; (2) the Commission's decision is not supported by sufficient competent evidence and is against the overwhelming weight of the evidence in that the opinions of Employee's doctors were not uniform, and Employee had pre-existing back pain and psychological problems; and (3) the Commission failed to make a clear and concise finding that the cumulative injury alone caused Employee's permanent total disability. Employer also reiterates portions of point two, in two additional points relied on.

Affirmed.

### Facts

In her claim for compensation for injuries sustained at work, employee Betty Higgins alleged two specific back injuries—dating July 10, 1995, and July 8, 1996—and cumulative trauma to her back as of her last day of employment in February 1998. Employee alleged the cumulative back trauma rendered her permanently and totally disabled. The ALJ awarded 10% permanent partial disability for the 1995 injury, no permanent disability for the 1996 injury, and no disability for the cumulative trauma. The Commission modified and reversed, awarding benefits for 3% permanent partial disability for the 1995 injury and 2% permanent partial disability for the 1996 injury. The Commission further found Employee suffered from chronic pain disorder and major depression as a result of her cumulative back trauma, and awarded her benefits for permanent total disability. Finding the permanent total disability resulted solely from the cumulative trauma, the Commission assigned sole liability to Employer, with no liability on the part of the Second Injury Fund. Employer appealed the decision on the cumulative trauma claim, but not the decisions on the individual 1995 and 1996 injuries.

In 1984, Employee began working for Quaker Oats Company, where she held various laborer positions until February 1998. Employee's tasks for Employer over the years included shoveling up to several thousand pounds of spilled product, pulling heavy "gondolas" on hand jacks and hand trucks, inserting and packing on the conveyor line, stacking bags weighing up to 100 pounds, and driving fork trucks. Much of her work over roughly fourteen years involved bending, pulling, and rotating her back with heavy loads.

The hand jacks and hand trucks, some of them self-propelled, would frequently get stuck on cracks or debris on the floor, causing the jacks and trucks to stop suddenly, jerking Employee's body. The motorized hand trucks moved so fast that Employee had to run with them. The jacks and trucks got stuck several times per week, and the sudden stop was so forceful it would sometimes throw Employee to the floor. On July 10, 1995, Employee was operating a motorized hand truck when it caught on something, jerking her, throwing her to the ground, and injuring her back. She missed three weeks plus one day of work, then resumed her regular duties, despite continuing back pain. She was diagnosed as suffering from degenerative disc disease and trauma. On July 8, 1996, a motorized hand truck suddenly stopped and Employee again injured her back, resulting in a diagnosis of severe lumbosacral strain. Following that incident, the motorized hand trucks were modified to move more slowly.

Employee alleged that her cumulative injury resulted from years of lifting, pulling, and twisting her back, as well as

jerking and bumping from the hand jacks, hand trucks, and fork truck. Her work-related back problems date at least as far back as 1984, when she fell while pulling a heavy load of products. For some time after the 1995 injury she worked light duty, but that proved more painful to her back than regular duty. Driving a fork truck, which was part of her responsibilities in her later years of employment, was little better than the constant lifting and pulling, which she still had to do. Employee testified that the fork trucks had no shock absorbers, and uneven spots—such as where trailers did not align well with loading docks—resulted in severe bouncing, "like bouncing over a curb." Although Employee had low back discomfort stemming from work and non-work incidents since at least 1973, she was able to perform the necessary functions of her job until, near the end of her employment, she required assistance from coworkers to get on and off the fork truck. On December 15, 1997, Employee was wholly unable to get on the fork truck, even with help from her coworkers. The following morning, she could not get out of bed, and had to call her mother to help her dress and go to the doctor. She tried to return to work in January 1998, but pain forced her to leave her employment on February 1 that year.

As a result of Employee's chronic pain, she cannot perform basic household tasks, cannot bathe, cannot concentrate, cannot remember things, cannot sleep through the night. She feels like she is "going to explode." She takes prescription pain medication, yielding only partial relief, and walks with a cane. One doctor described her walk as more of a "waddle." At least three physicians concluded that surgery would not likely improve Employee's pain. She depends upon her mother for much of her care.

Employee has a history of psychological stresses. Evidence showed that she suffered depression leading to suicidal gestures in the 1960s and 1970s, and one doctor opined that those incidents correlated with drug abuse. In her youth she was a victim of sexual assault and a witness to abuse toward her mother. Recent family stresses include conflict with her son and caring for her incarcerated daughter's children. In December 1995, Employee attempted suicide. However, Dr. John Pro, a psychiatrist, observed that she returned to her job shortly thereafter, even working overtime in January 1996. Dr. Pro observed that any psychological challenges Employee faced throughout her life had not been a hindrance to her employment, as she had always persisted in working, until the culmination of her cumulative back injury in 1998.

Dr. Pro diagnosed Employee with chronic pain syndrome due to tissue damage and psychological factors. Dr. Pro also diagnosed major depression consequent to the cumulative trauma as of February 1998, but concluded that any psychiatric disability prior to 1998 had not been a hindrance to employment. He concluded that Employee's major depression stemmed primarily from the pain attributable to the cumulative trauma to her back and her resulting inability to work. He explained that Employee's depression aggravates her pain perception, while her pain in turn makes her more depressed, so the two problems "reverberate against each other." Dr. Pro concluded that Employee is permanently totally disabled and attributed 100% of the disability to cumulative back trauma and the consequent chronic pain syndrome and depression.

Other doctors drew differing conclusions about Employee's disability. Dr. Brent Koprivica, who is not a psychiatrist, agreed with Dr. Pro that Employee was

totally disabled and deferred to Dr. Pro's psychiatric analysis. Dr. Koprivica assigned 25% disability to Employee's pre-existing degenerative disc disease and only 15% to cumulative trauma. Dr. Michael Poppa, who is not a psychiatrist, opined that Employee suffered no permanent disability due to cumulative trauma or depression. The Commission expressly found Dr. Pro's opinion credible and gave it greater weight, including his opinion that Employee did not exhibit purposeful symptom magnification. The Commission also expressly found Employee to be a credible witness.

Employee left school after the ninth grade, but completed her GED in 1977. Her work experience prior to Quaker Oats includes driving a tractor-trailer, operating a sewing machine, tending bar, packing meat, and cashiering at a convenience store. Other than truck-driver training, she has completed no vocational education. Vocational expert Mary Titterington, whom the ALJ found credible and well qualified, performed intelligence, reading comprehension, and vocabulary tests, and concluded that Employee is of average intelligence but cannot focus. The tests further indicated that Employee was putting forth a good effort, not attempting to skew the results. Ms. Titterington testified that Employee's physical limitations left her able to perform only sedentary work, and that the psychological factors as diagnosed by psychiatrists left employee unemployable.

### Discussion

#### I.

■ In its first point on appeal, Employer asserts that the Commission acted without or in excess of its power when it allowed Employee to present a "hybrid" claim comprising the cumulative trauma along with the two specific instances of back injury. Employer cites no authority explaining the limits of the Commission's power. Employer cites no authority exemplifying when the Commission acts within or beyond its power. Employer cites only authorities indicating this court's standard of review, namely *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003), and Section 287.495.1(1).[1] The one additional authority cited by Employer, *Holaus v. William J. Zickell Co.*, 958 S.W.2d 72 (Mo.App.1997), says nothing at all about the scope of the Commission's power, and is therefore irrelevant to this point on appeal.

■ Employer properly states the standard of review. But the standard of review provides no guidance on the limits of power vested in the Commission by the legislature. Employer therefore fails to cite any authority relevant to its point. Rule 84.04(d)(5) requires that each point include a list of authority on which the appellant relies. "Ordinarily, a point of error unsupported by citation of *relevant* authority is deemed abandoned." *Bishop v. Bishop*, 618 S.W.2d 261, 263 (Mo.App. 1981) (emphasis added). Because Employer cites no relevant authority for the assertion that the Commission erred by acting without or in excess of its power, we deem Employer's first point abandoned.

#### II.

■ We combine our discussion of Points II, IV, and V because each deals with whether the award was supported by sufficient competent evidence or was against the overwhelming weight of the evidence in various respects. Each point deals with much of the same evidence and is subject to the same standard of review. This court reviews conclusions of the Com-

---

1. All *statutory citations are to* Mo.Rev.Stat. (2000), unless otherwise indicated.

mission to determine if they are supported by sufficient competent evidence. Section 287.495.1(4). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "[T]he phrase 'overwhelming weight of the evidence' connotes evidence that is more persuasive than that which is merely 'of greater weight or more convincing than the evidence which is offered in opposition to it.'" *DeGraffenreid v. R.L. Hannah Trucking Co.*, 80 S.W.3d 866, 881 (Mo.App.2002) (quoting *Vaught v. Vaughts, Inc./S. Mo. Constr.*, 938 S.W.2d 931, 941 (Mo.App. 1997)).

■ Employer's second point on appeal argues that the record lacks sufficient competent evidence to support the Commission's decision that Employee was permanently and totally disabled as a result of cumulative trauma to her back. We find that the Commission's decision is not against the overwhelming weight of the evidence and is supported by substantial competent evidence.

■ We note that Employer analogizes to no case where a court found the Commission's decision was not supported by substantial competent evidence. Employer distinguishes no case where a court affirmed the Commission's decision. Employer cites no authority indicating what facts the Commission must or may not consider, or whether the Commission may reject the fact findings of the ALJ. Employer merely cites the standard of review. Rule 84.04(d)(5) requires that each point include a list of authority on which the appellant relies. "Ordinarily, a point of error unsupported by citation of *relevant* authority is deemed abandoned." *Bishop*, 618 S.W.2d at 263 (emphasis added). "Liberal application of the procedural

rules is promoted, however, to promote justice and minimize the number of cases disposed of on technical grounds." *Foster v. Village of Brownington*, 140 S.W.3d 603, 608 (Mo.App.2004). We elect to review Employer's second point on the merits.

■ The Commission considered multiple experts' opinions drawing conclusions about the cause and scope of Employee's disability. "The Commission is free to believe all, part, or none of the evidence presented at the hearing." *DeGraffenreid*, 80 S.W.3d at 875 (internal quotation marks omitted). We cannot say it was against the overwhelming weight of the evidence for the Commission to conclude that Employee's cumulative back injury caused chronic pain disorder and depression, rendering her unable to work.

■ "[A] mental injury triggered or precipitated by a work-related accident is ... compensable provided it can be shown that the accident was a substantial factor in causing the injury." *Tangblade v. Lear Corp.*, 58 S.W.3d 662, 667 (Mo.App. 2001). Dr. Pro, whom the Commission expressly found credible, testified that Employee's major depression was attributable to the pain resulting primarily from the cumulative back injury. "A single expert's opinion may be competent and substantial evidence in support of an award of benefits, even where the causes of the occupational disease are indeterminate in nature." *Kent v. Goodyear Tire & Rubber Co.*, 147 S.W.3d 865, 868 (Mo.App.2004). The Commission noted that Drs. Koprivica and Poppa drew different conclusions than Dr. Pro about the extent of Employee's disability. The Commission gave greater weight to Dr. Pro's opinion. This court "defers to the ... Commission's decisions regarding the weight given to witnesses' testimony, and is bound by the Commission's factual determinations when the evi-

dence supports either of two opposing findings." *Id.*

 In support of its assertion that the cumulative injury did not cause Employee's permanent total disability, Employer argues that Employee had suffered prior physical injury and psychiatric difficulties. The Commission, however, relied on Dr. Pro's opinion in concluding that Employee did not have psychiatric disability hindering employment prior to the culmination of the cumulative injury. And Employee did continue to work until the cumulative injury left her permanently and totally disabled as of February 1998. We acknowledge the following principle:

> ██ preexisting but non-disabling condition does not bar recovery of compensation if a job-related injury causes the condition to escalate to the level of disability. If substantial evidence exists from which the Commission could determine that the claimant's preexisting condition did not constitute an impediment to performance of claimant's duties, there is sufficient competent evidence to warrant a finding that the claimant's condition was aggravated by a work-related injury.

*Miller v. Wefelmeyer,* 890 S.W.2d 372, 376 (Mo.App.1994) (citations omitted). The Commission noted that Employee had previously suffered back pain, but that preexisting back pain had not persistently prevented her from working prior to February 1998. Furthermore, this court "is bound by the Commission's factual determinations when the evidence supports either of two opposing findings." *Kent,* 147 S.W.3d at 868. We cannot say the Commission's decision was against the overwhelming weight of the evidence.

Our decision in *Bloss v. Plastic Enterprises,* 32 S.W.3d 666 (Mo.App.2000), guides us in assessing the Commission's finding that Employee's mental disability resulted from her cumulative trauma injury. In *Bloss,* the employer alleged that the employee's mental disability did not arise out of her employment. *Id.* at 672. Evidence in *Bloss* showed that the employee had psychological problems before the physical accident giving rise to the workers' compensation claim: she suffered histrionic personality disorder, presented a history of alcoholism and drug abuse, and had been hospitalized for mental issues. *Id.* at 673. This court agreed with the employee's complaint "that instead of focusing on her diagnosed psychological impairment, the [employer] attempt[s] to paint her as a bad person by pointing to wholly irrelevant evidence of childhood sexual abuse and marital problems that pre-date by fifteen years or more the [present] injury and symptoms arising therefrom." *Id.* The Commission found the employee permanently and totally disabled by the combination of her back injury and the concomitant "symptom magnification disorder." *Id.* The court affirmed, noting the dispute over the cause of the employee's mental injury and saying, "[w]here the right to compensation depends upon which [of] two conflicting medical theories should be accepted, the issue is peculiarly for the Commission's determination." *Id.* at 672 (internal quotation marks omitted).

Here, the Commission similarly weighed conflicting medical explanations for Employee's mental disability. The Commission concluded that her prior mental stressors had not caused any permanent psychiatric disability and that her present mental disability was solely consequent to the cumulative trauma. The Commission relied on Dr. Pro's opinion that Employee did not have, prior to the cumulative trauma injury, any psychiatric disability that was a hindrance to employment. Dr. Pro noted that Employee had returned to

work after her prior psychiatric hospitalization, and had previously coped with her family-related stress. We find the Commission's decision supported by sufficient competent evidence.

■ The test for permanent total disability is whether the employee is "competent to compete in the open labor market," i.e., unable to return to any "reasonable or normal employment." *Gordon v. Tri-State Motor Transit Co.*, 908 S.W.2d 849, 853 (Mo.App.1995). Vocational expert Mary Titterington testified that, based upon the limitations placed on Employee by her doctors and her pain-induced inability to concentrate, Ms. Higgins was unemployable. We cannot say the Commission's decision lacks substantial competent evidence in the record, or that the decision is against the overwhelming weight of the evidence. Point denied.

Employer alleges in the fourth point on appeal that the Commission erred in finding that the cumulative trauma caused Employee's permanent total disability because the finding is contrary to the overwhelming weight of the evidence. Employer's second point on appeal, discussed above, alleges that the Commission erred in finding Employee permanently and totally disabled as a result of the cumulative trauma because the finding is contrary to the overwhelming weight of the evidence. The legal issue, sufficiency of the evidence showing the cause and scope of Employee's disability, is identical in both points. The particular facts raised in the argument sections of Employer's brief differ only slightly. Employer again cites no authority beyond the standard of review. For the reasons articulated in point two above, we find the Commission's decision supported by sufficient competent evidence. Point denied.

Employer alleges in the fifth point on appeal that the Commission erred in finding that the cumulative trauma caused Employee's mental disability because the finding is contrary to the overwhelming weight of the evidence. Employer raised this same argument in point two. Employer again cites no authority supporting its position, other than the standard of review. For the reasons articulated in point two above, we find the Commission's decision supported by sufficient competent evidence. Point denied.

### III.

■ In its third point, Employer argues that the Commission failed to make a clear and concise finding that the cumulative injury alone caused Employee's permanent total disability. In this third point, Employer does not challenge the Commission's *finding* that Employee suffers permanent total disability. Rather, Employer asserts that the Commission's award is "vague and nebulous" in violation of statutory requirements.

■ Whether the Commission properly construed and applied the Workers' Compensation Act is a question of law, subject to *de novo* review by this court. *West v. Posten Constr. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991). Employer complains that "the Commission does not use the phrase 'alone and of itself' or 'in and of itself' and does not make any finding of fact as to the degree of disability from the [cumulative trauma] injury." Indeed, the standard for an employer's liability where there is pre-existing disability is that "the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered *alone and of itself.*" Section 287.220.1 (emphasis added). However, Employer cites no authority for the proposition that the Commission must employ any magic language in its decision. Employer cites no case in which a court reversed, modified, set aside,

or remanded a Commission decision for failure to make sufficiently clear findings.

■■■ Employer cites *Hughey v. Chrysler Corp.*, 34 S.W.3d 845, 847 (Mo. App.2000), for the proposition that, where liability is to be apportioned between the employer and the Second Injury Fund, the Commission must determine the degree of disability caused by the last injury. This accurately states the law, but it fails to support Employer's point. We find no authority supporting the proposition that the Commission must employ any particular language to effectuate its decision finding the scope of disability. On the contrary, findings are adequate where they "set out the actual grounds of decision and make possible an intelligent judicial review." *Stegeman v. St. Francis Xavier Parish*, 611 S.W.2d 204, 207 (Mo. banc 1981). Furthermore, a clear agency decision "impl[ies] a finding of additional facts (beyond those expressly found) necessary to support it." *Petersen v. Cent. Pattern Co.*, 562 S.W.2d 153, 156 (Mo.App.1978).

■■■ The Commission said in its award on the cumulative injury claim,

> Dr. Pro . . . concluded that [Employee's] major depression is attributable to her pain, which is due primarily to her last work injury in 1998. . . . We find the opinion of Dr. Pro credible. . . . *We find Employee's accumulated back injury caused chronic pain disorder and depression, rendering her unable to work.* Employer/Insurer is responsible for weekly permanent and total disability benefits . . . continuing for the remainder of her life or until . . . modified by law.

(Emphasis added.) The Commission further found that Employee did not suffer "any permanent psychiatric disability" prior to the cumulative back injury. We find the Commission's decision plain enough to infer—to the extent that inference is even

necessary—that the Commission attributed all of Employee's permanent total disability to the cumulative injury. Consequently, the Commission properly assigned full liability to Employer and none to the Second Injury Fund: "If the last injury in and of itself rendered [the employee] permanently and totally disabled, then the [Second Injury Fund] has no liability and [the employer] is responsible for the entire amount of compensation." *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 248 (Mo. banc 2003). Point denied.

The award of the Commission is affirmed.

ROBERT G. ULRICH, Judge, and JOSEPH M. ELLIS, Judge, concur.