Mark Anthony COLE, Claimant-
Appellant,

v.

ALAN WIRE COMPANY, INC.,
Employer-Respondent.

No. SD 34690

Missouri Court of Appeals,
Southern District,
**Division One.**

Filed: June 27, 2017

MATTHEW K. LAWLER, Sikeston, MO, for Appellant.

JARED P. VESSELL, Columbia, MO, for Respondent.

DON E. BURRELL, J.

Mark Anthony Cole ("Claimant") appeals the final award of the Labor and Industrial Relations Commission ("the Commission") denying his workers' compensation claim that arose from a 2014 work accident in Sikeston at Alan Wire Company, Inc. ("Employer").[1] *See* section 287.495.1.[2] Claimant's first two points claim "[t]he Commission erred in finding that the accident was not the prevailing factor in causing the medical conditions and disability ... because the Commission": (1) "exceeded its jurisdiction" by "exercising an overly technical and parsed analysis" so as to not credit the opinion of Claimant's medical expert; and (2) disre-

---

1. Although Claimant's claim against Employer identified Missouri Merchants and Manufacturing Association as the insurance carrier, that entity has not filed a brief.

2. Statutory references are to RSMo 2016.

garded the treating doctor's testimony on the ground that the doctor's "explanation lacked the language of the appropriate statutory test." Claimant's third point contends "[t]he Commission exceeded its jurisdiction by entering a final award because the issue of medical causation was not properly resolved and a temporary award should have been entered."

■ Because Claimant's challenges to the Commission's jurisdiction in points 1 and 3 are not specific, and the contentions are not developed in Claimant's arguments so as to identify how the Commission exceeded its statutory jurisdiction, we consider these portions of those points abandoned. *See Whiteley v. City of Poplar Bluff*, 350 S.W.3d 70, 77 n.4 (Mo. App. S.D. 2011).[3] And despite Claimant's insistence that he is not attempting to relitigate medical causation before this court, the remaining contentions in Claimant's points distill to an argument that the Commission erred by not adopting Claimant's view of the conflicting evidence. Our obligation to examine the whole record does not alter the deference we must afford the Commission in resolving conflicting medical testimony given by various expert witnesses. *See Malam v. State, Dep't of Corr.*, 492 S.W.3d 926, 928 (Mo. banc 2016). As a result, the Commission's decision to deny compensation is not contrary to the overwhelming weight of the evidence and must be affirmed.

### Applicable Principles of Review and Governing Law

■ A reviewing court may modify, reverse, remand for rehearing, or set aside a workers' compensation award upon a finding that: (1) the commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the commission's factual findings do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Section 287.495.1[.] "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

■ Questions of law are reviewed *de novo. Pierce v. BSC, Inc.*, 207 S.W.3d 619, 621 (Mo. banc 2006). This Court must defer to the commission's findings on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence. *Treasurer of State–Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013). The determination of whether an accident is the "prevailing factor" causing a claimant's condition is an inherently factual one. *Maness v. City of De Soto*, 421 S.W.3d 532, 539 (Mo. App. 2014). Although the commission's decision is afforded substantial deference, this Court must still "examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton*, 121 S.W.3d at 222–23.

*Malam*, 492 S.W.3d at 928 (footnote omitted).[4]

3. As a general matter in workers' compensation cases, section 287.480.1 "gives the Commission plenary authority to make an award in any case properly brought before it." *Molder v. Mo. State Treasurer*, 342 S.W.3d 406, 410 (Mo. App. W.D. 2011).

4. We find certain logical difficulties in applying *Hampton*'s directive to "examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award[,]" 121 S.W.3d at 222-23, in cases involving a *non*-award by the Com-

## Evidentiary Summary and Procedural History

Claimant and counsel for the parties appeared before an administrative law judge ("the ALJ") in September 2015 for the presentation of evidence on "a request for a temporary award." The issues for determination were whether a work accident occurred, and if so, whether it was the medical cause of Claimant's injuries. Claimant presented claims dependent upon a favorable determination of these issues for "previously incurred medical aid[,]" "future medical aid[,]" and 15 weeks of temporary total disability payments. Employer "request[ed] that if all issues are found against [Claimant], then a temporary award shall be converted into a final award."

Claimant testified that he was 47 years old at the time of the hearing, and he had worked in various occupations after being honorably discharged from the military in 1990. He became disabled for about five years as the result of Graves' disease, but he "ma[d]e a recovery" and went "back to work[.]" He eventually began working in a job where he operated a forklift, and during that period he suffered a back injury that caused him to experience pain going down into both legs that felt "like a tingling problem, like a burning almost." He did not file a workers' compensation claim or receive a work-related settlement for that injury.

Thereafter, Claimant worked at other jobs without experiencing pain or swelling

in his right knee. He had previously broken his right ankle and hurt his left knee on different occasions playing basketball. Claimant began working for Employer in May 2014. At that time, he denied any pain in his knees, but he explained that he had been experiencing "buckling" of his knees. Claimant also acknowledged that he had fallen "a couple of times" while working for Employer.

On September 15, 2014, Claimant was operating a forklift to load and unload trucks. He was not having any pain or swelling in his right knee. He was wearing steel-toed boots as required by Employer, and he described them as "pretty heavy." Claimant parked his forklift, and he stepped down from it onto his left foot. He estimated the height of the exit from the forklift as being "[n]ineteen, twenty inches" off of the ground and higher than an "ordinary stair" for something like a house. "As soon as [he] stepped [with his right foot], there was a pop and [he immediately] felt pain[.]"

On cross-examination, Claimant clarified that he had already reached "the ground before [his] knee popped[.]" Claimant pulled up his "pants leg and there was a knot just getting bigger and bigger and bigger[,]" and he put ice on his knee.[5]

The next day, a manager for Employer told Claimant that he was being sent to be examined by Dr. Thomas Marsh. After seeing Dr. Marsh, Claimant understood that Dr. Marsh did not think that Claimant

---

mission—i.e., a decision against the party with the burden of persuasion—for the reasons set out in *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010). However, both the majority and dissenting opinions in *Malam* purported to use the *Hampton* standard in their analyses of the Commission's affirmance of a decision denying compensation, so we will continue to apply it to the best of our ability.

5. The Commission found that "[t]he popping and pain in [Claimant]'s knee when he stepped down from his forklift on September 15, 2014" was an "accident" for purposes of section 287.020.2, and Employer has not appealed that finding. Without expressing any opinion on the matter, and simply for the sake of convenience, we will reference the incident as "the work accident."

had "a work-related injury[.]" Dr. Marsh's report was admitted into evidence, and it indicated that the doctor saw Claimant on September 17, 2014. Dr. Marsh observed "little swelling [of the knee] other than an area of a fullness or hardened region in the anterior aspect of the medial joint line." The doctor noted that Claimant said "he has had 'noisy knees' or popping sensations in his knees" and this "has been going on for quite some time ... at least for the past several years[.]" Dr. Marsh also reported that "it is specifically the buckling of the knees that has caused [Claimant] to fall on a recurring basis out of the blue[.]"

In late September 2014, a set of magnetic resonance images ("MRI") was made of Claimant's knee, and a report of the MRI by Dr. Kimberly Foust was admitted into evidence. Dr. Foust reported that Claimant's right knee showed "[m]ild" patellofemoral compartment chondrosis, an area of "multiloculated fluid" that "may represent a ganglion cyst[,]" and an area in the "soft tissues of the right knee" that was "likely a contusion."

After the MRI, Dr. Marsh supplemented his report to note that the MRI revealed "a suspected ganglion cyst" and the "suggestion of a contusion[.]" Given that Claimant had not reported hitting his knee during the work accident, Dr. Marsh noted that "a likely source for any contusion" may be Claimant's reported history of falls and buckling knees. Dr. Marsh stated that "[t]here is nothing to suggest an internal derangement" in the knee and opined, "there appears little to suggest that something new has occurred to his right knee which was symptomatic before the 'pop'

... [and] was symptomatic on a chronic basis before the" work accident.

Claimant said that his right knee did not improve, and he saw Dr. Cary Sanders in October 2014. Records from Claimant's treatment by Dr. Sanders and his February 2015 letter to Claimant's counsel were admitted into evidence. Dr. Sanders's records noted that the MRI showed "multiple par[a]meniscal cysts" and that Claimant consented to surgery to improve the "mechanical symptoms and pain" in his right knee. Dr. Sanders performed surgery on Claimant's knee on October 27, 2014. In addition to removing a "small cyst" during the surgery, Dr. Sanders observed that "[t]he ACL appeared to be intact, although there was some stranding and thinning of the ACL." [6] Dr. Sanders advised that Claimant should remain off work following the surgery until February 9, 2015.

Dr. Sanders's 2015 letter contained the following answers to specific questions he had received from Claimant's counsel:

In response to your first question regarding [Claimant's] possible workers comp. claim and the prevailing factor of the knee condition/injury/disease. The answer: I do believe based on his history that the condition began arising from his workers compensation claim. His diagnosis was parameniscal cyst which could be a result of trauma sustained at that time. There was no tearing of the meniscus. Question two, w[h]ether or not [Claimant] is at maximum improvement. Not at this juncture. I last saw [Claimant] on 1/9/15 and he was continuing to advance with his physical therapy and planning to be off work for an additional month intending to return to work in February of this year. I do expect him

---

**6.** We understand "ACL" to be a reference to the anterior cruciate ligament "that attaches the front of the tibia with the back of the femur[.]" Merriam Webster Dictionary (June 2017) https://www.merriamwebster.com/dictionary/anterior%2Bcruciate%2Bligament.

to be at [m]aximum medical improvement in 1-2 months. Question three, if further medical treatment is needed. The only care I think he needs at this point is continued physical therapy. I expect him to make a complete recovery. Question four, w[h]ether or not [Claimant] has been able to work as the result of the condition, and for what period of time. [Claimant] has been able to work but to what extent I cannot say based on my records alone. I know that he has been off work since time of surgery on 10/27/14. Otherwise, I cannot say prior to that what his work status was. Question five, what did your objective testing on physical exam reveal? Answer: physical exam revealed pain to palpation over the anterior lateral joint line with a palpable cyst note. He had symptoms of meniscus irritability (McMurrys sign). He did have a normal range of motion with normal strength, normal stability about the knee. Other objective testing included an MRI scan which confirmed the presence of a parameniscal cyst in the anterior lateral aspect of the lateral meniscus. Question six, what is the diagnosis concerning the injury of [Claimant]. Answer: parameniscal cyst of the right anterior lateral knee. Question seven, w[h]ether or not the treatment obtained was reasonable and necessary to cure the condition. Answer: Yes. The treatment rendered is within the standard of care for the diagnosis with continued pain despite conservative treatment is [sic] an indication for excision of a parameniscal cyst.

Following Claimant's surgery, and at the request of his attorney, Claimant was evaluated by Dr. Dwight I. Woiteshek in December 2014, and his written report and deposition were admitted into evidence. Dr. Woiteshek reviewed Claimant's medical records, including records from Dr. Marsh. Dr. Woiteshek testified that Claimant "denied having any prior problems like this with his right knee prior to" the work accident. "[R]elative to the work injury of 9/15/14[,]" Dr. Woiteshek opined: "[Claimant] had traumatic internal derangement of the right knee with some stranding and thinning of the ACL found by Dr. Sanders at the time of surgery, and this is all reasonably confirmed." Dr. Woiteshek acknowledged that, based upon his review of the medical records, Dr. Sanders did not find any "tears to the ACL" and "did not repair the ACL" during Claimant's surgery.

Dr. Woiteshek testified that the work accident was "the prevailing factor in [his] diagnosis of internal derangement of the knee with stranding and thinning of the ACL[.]"[7] Dr. Woiteshek believed that Claimant had not reached "maximum medical improvement"; he would be unable to work "until the unforeseeable future with his present condition"; and, "due to that traumatic internal derangement of the right knee with some stranding and thinning of the ACL[,]" Claimant "had a 35 percent permanent partial disability of the lower extremity rated at the knee level[.]" As to whether there was any condition existing before the work accident, Dr. Woiteshek "felt that the parameniscal cyst of the lateral aspect of the right knee that was seen on the MRI Scan taken on September 29th, 2014 was preexisting, but it was completely asymptomatic by [Claimant], what [sic] he told me in the ... office."

During his deposition, Dr. Woiteshek acknowledged making two mistakes in his

---

7. Dr. Woiteshek explained that "[i]nternal derangement is a broad term used for many things that can occur in the knee," but in Claimant's particular case, the doctor thought that this meant that Claimant "had an ACL deficient right knee." Further, "stranding and thinning.... means it was injured[,]" according to Dr. Woiteshek.

evaluation of Claimant: he incorrectly reported that Claimant had worked for Employer "for approximately the past 27 years[,]" and he included in Claimant's medical history an August 2014 MRI of a left knee that actually belonged to a different individual. As ` for the third-party's MRI, Dr. Woiteshek had used it, along with Claimant's denial of previous right knee problems, as a basis for interpreting Dr. Marsh's statements referencing a knee problem to mean that Claimant's left knee had been a previous source of problems while the right knee had not.

Claimant returned to work in February 2015. Later that month, he was evaluated by Dr. Luke S. Choi at Employer's request. In June 2015, Dr. Choi reviewed Claimant's MRI, which had not previously been provided to Dr. Choi. Dr. Choi's September 2015 deposition, along with his two written reports, were admitted into evidence.

Dr. Choi understood from his meeting with Claimant that the work accident "was not one traumatic event, such as a twisting of his knee, falling down, striking his knee, but [Claimant] experienced a painful . . . popping sensation, when he was basically getting off the forklift, stepping off." Dr. Choi examined Claimant's right knee and determined that Claimant "had patellofemoral crepitus and a positive patellar grind test, which basically points to his patellofemoral joint as a potential source of his pain and discomfort." Dr. Choi did not observe signs of ligament instability or meniscus pathology. He diagnosed Claimant as having "[a] right knee chondromalacia of the patellorfemoral joint[,]" meaning an "irritation, inflammation, even potential degeneration of cartilage[,]" also known as "arthritis, [or] early arthritis[.]" Dr. Choi explained that, absent "a traumatic component[,]" chondromalacia is not an acute disorder but instead "a degenerative process."

Dr. Choi also thought that the MRI indicated "a multilobular, essentially, ganglion cyst in . . . the Hoffa's fat pad." He wanted to make "absolutely very clear" in his testimony that the cyst was "not a parameniscal cyst that is associated with a meniscus tear." Dr. Choi stated that "[i]n this case" there was no meniscal tear and, in his opinion, it was incorrect terminology to describe the cyst as a parameniscal one. Dr. Choi said that despite Dr. Woiteshek's opinion that "there was an ACL injury," Dr. Choi regarded the ACL as "completely intact" with "no evidence of any type of sprains, injury, tears, at all." Dr. Choi testified that "the source of [Claimant's] pain and problems" was "[a]bsolutely not" what Dr. Sanders described as something like "stranding or thinning of the ACL[.]"

Dr. Choi did not believe that Claimant's patellofemoral chondromalacia and cyst were caused by the work accident. In Dr. Choi's opinion, Claimant did not need "any additional treatment" or require any permanent restrictions as a result of the work accident. Dr. Choi did not regard Claimant as being "permanently and totally disabled, as a result of [the work accident]." The doctor stated that Claimant's "subjective complaints of buckling episodes or sense of instability" could not be explained "based on his exam."

Claimant testified that, as of the hearing date, he was still having pain and stiffness in his right knee. He described the pain as varying from no pain on some days to pain at a five or six (on a scale of one to ten) on other days. Claimant had attended some physical therapy sessions, and he testified that he wanted to continue physical therapy, but he stopped going when he became unable to pay for it.

After the hearing, the ALJ entered a "temporary and partial [award], . . . subject to further order," that found Employer liable for Claimant's past and future

medical bills related to the work accident. The ALJ also awarded temporary total disability for the period of time from Claimant's knee surgery to his February 2015 return to work. Employer appealed that decision to the Commission.

Upon its review, the Commission reversed the award of the ALJ, finding that "the [work] accident was not the prevailing factor causing the medical conditions and disability for which [Claimant] claims compensation[.]" In reaching this conclusion, the Commission "found the expert medical opinions advanced by [Claimant] to be unpersuasive." This appeal timely followed. *See* section 287.495.1. Additional details included in the Commission's findings and conclusions will be addressed in the context of our analysis of Claimant's points on appeal.

## Analysis

We consider the contentions in points 1 and 2 that the Commission "disregarded" the testimony of Dr. Sanders and did not credit the opinion of Dr. Woiteshek in determining that the work accident was not the prevailing factor in Claimant's "medical conditions and disability" with Claimant's contention in point 3 that medical causation "was not properly resolved[.]"

■ Section 287.020.3(1) provides that "[a]n injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability. 'The prevailing factor' is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." "It is the claimant's burden in a worker's compensation proceeding to prove all of the elements of his claim to a reasonable probability." *Hoven v. Treasurer of State, Custodian of Second Inju-*

ry *Fund*, 414 S.W.3d 676, 678 (Mo. App. E.D. 2013). "Medical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause." *Malam*, 492 S.W.3d at 929 (quotation omitted). "The Commission is free to believe whatever expert it chooses as long as each opinion is based on substantial and competent evidence, and the appellate court will not disrupt such choice even if the competing expert is worthy of belief." *Beatrice v. Curators of Univ. of Mo.*, 438 S.W.3d 426, 437 (Mo. App. W.D. 2014).

■ In support of his Point-3 contention that "medical causation was not properly resolved[,]" Claimant cites *Downing v. Willamette Indus., Inc.*, 895 S.W.2d 650, 655 (Mo. App. W.D. 1995) (overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)), for the principle that he had to prove "that the injury and disability arose out of and in the course of [his] employment" to a degree of reasonable probability, not certainty. While it is correct that Claimant's burden to prove that the work accident was the prevailing factor causing his knee injury is one of reasonable probability, *see Hoven*, 414 S.W.3d at 678, that standard of proof does not change the fact that "competing expert witness opinions present a question of fact for the Commission to decide." *Campbell v. Trees Unlimited, Inc.*, 505 S.W.3d 805, 808 (Mo. App. S.D. 2016).[8]

■ Here, the Commission determined that because of "the complex nature of the claimed injury" to Claimant's right knee, the Commission would not rely on its "own lay opinions[,]" or even a " 'chronology therefore causation' approach [Claimant]

---

8. Claimant's additional argument under Point 3 is that "the need for further investigation and medical examination is readily evident[,]" but "the Commission has barred [Claimant]

advance[d,]" but would instead determine whether credible and persuasive medical expert testimony supported Claimant's claim. The Commission determined that there was *"an absence of persuasive expert medical opinion evidence to support [Claimant]'s claim."* (Emphasis added.)[9]

As for the evidence provided by Dr. Sanders, the Commission found that "the appropriate statutory test" was not applied by Dr. Sanders, and he opined "merely that the parameniscal cyst he excised 'could have' resulted from the accident." The Commission found Dr. Woiteshek's opinion not persuasive because he "lacked critical information regarding [Claimant]'s preexisting buckling/instability with regard to the right knee, and identified a 'resulting medical condition' (stranding and thinning of the ACL) that he ultimately agreed was not addressed in the disputed surgery performed by Dr. Sanders." Additionally, the Commission noted that Dr. Sanders's opinion was "directly contrary to that of Dr. Woiteshek" in that Dr. Sanders regarded the work accident as causing the parameniscal cyst and Dr. Woiteshek thought that parameniscal cyst existed *before* the work accident, but the work accident caused " 'some stranding and thinning of the ACL[.]' "

Claimant argues that Dr. Sanders opined that " 'the condition began arising from' " the work accident, and the Commission "completely ignore[d] the fact that Dr. Sanders answered the prevailing factor question in the affirmative[.]" Claimant cites *Malam*, 492 S.W.3d at 929, to argue that the Commission made an " 'overly technical and parsed analysis' " of Dr. Woiteshek's testimony "that overlook[ed] the plain meaning of what he said." Specifically, Claimant insists that the Commission treated Dr. Woiteshek's testimony that Claimant had " 'denied having any prior problems like this with his right knee prior to' " the work accident too broadly, when the testimony actually meant that Dr. Woiteshek thought that Claimant had not previously experienced the same "type of pain and weakness concurrently" as he did during the work accident.

The *Malam* opinion involved the Commission's interpretation of what the employee's *only* medical expert meant in describing a work incident "as both a 'precipitating' and a 'prevailing factor' in" the claimant's medical crisis. *Id.* at 927-28.[10] Here, even if Dr. Sanders's letter is accepted as responsive to a prevailing factor inquiry under section 287.020, and Dr. Woiteshek is accepted as saying that Claimant's experience with his right knee was different following the work accident, the opinions of these medical experts

---

from seeking the treatment he requires after it exceeded its powers by applying an incorrect, more restrictive standard"—presumably a reference to evidence from Dr. Sanders. Claimant does not explain why the Commission is obligated to enter a temporary award when Claimant failed to meet the burden of proof on his claim or how it barred Claimant from seeking treatment. We consider this argument abandoned because Claimant cites no authority in support of the argument, and he offers no explanation for the lack of such authority. *See Higgins v. The Quaker Oats Co.,* 183 S.W.3d 264, 269 (Mo. App. W.D. 2005).

9. The dissenting commissioner would have ruled in favor of Claimant based on the medical opinion testimony provided by Dr. Woiteshek.

10. Our high court summarized the medical expert testimony in *Malam* and explained its reasoning for reversing the decision denying benefits as follows:

> [T]he precise, dispositive issue of causation was resolved by the commission's assessment of the testimony of Dr. Puricelli [the employer's expert] and Dr. Koprivica [the claimant's expert]. As noted, the commission disputed Dr. Puricelli's conclusion because it was based on inaccurate facts. By

were in conflict as to what medical condition existed before the work accident and what medical condition resulted from the work accident.

There is nothing in the letter indicating that Dr. Sanders thought that the work accident was the prevailing factor in causing "stranding and thinning of the ACL[,]" which is contrary to Dr. Woiteshek's conclusion. Dr. Sanders observed that Claimant "had symptoms of meniscus irritability (McMurrys sign)[,]" but he thought that it was the parameniscal cyst that "could be a result of trauma sustained at that time [of the work accident]." At the very least, this conflict with Dr. Woiteshek's testimony that the parameniscal cyst was a preexisting condition and the work accident had caused the "stranding and thinning of the ACL" supported the Commission's conclusion that Claimant had failed to present *"persuasive* expert medical opinion evidence to support [his] claim." (Emphasis added.) As a result, he fails to demonstrate that his points on appeal merit a reversal of the Commission's decision.

Claimant's points are denied, and the decision of the Commission is affirmed.

JEFFREY W. BATES, P.J.—
CONCURS

MARY W. SHEFFIELD, C.J.—
CONCURS

discarding Dr. Puricelli's testimony, the commission was left with Mr. Malam's expert, Dr. Koprivica. The commission found that Dr. Koprivica did not testify unequivocally that Mr. Malam's workplace accident was the prevailing factor because he testified that the accident was the "prevailing factor precipitating" the hypertensive crisis.

. . . .

[T]his is not a case in which the commission made a credibility determination as to competing medical experts. Instead, this case involves an overly technical and parsed analysis of Dr. Koprivica's testimony that overlooks the plain meaning of what he said.

*Id.* at 929. Such is not the case here due to the existence of competing medical opinions and Dr. Choi's opinion that the work accident was not the prevailing factor in causing Claimant's condition.