Crystal ROYAL, Appellant,

v.

ADVANTICA RESTAURANT GROUP, INC., Respondent.

No. WD 65830.

Missouri Court of Appeals,
Western District.

June 27, 2006.

Nancy L. Jackson, Independence, MO, for appellant.

Thomas D. Billam, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, HAROLD L. LOWENSTEIN, Judge and PAUL M. SPINDEN, Judge.

JOSEPH M. ELLIS, Judge.

Crystal Royal appeals a July 13, 2005 decision of the Labor and Industrial Relations Commission of Missouri ("the Commission") denying her permanent total disability benefits under Missouri's Workers' Compensation Law. As the Commission's decision is supported by competent and substantial evidence on the whole record, it is affirmed.

Our review of the Commission's award [1] in this workers' compensation matter is governed by section 287.495.1 [2] of the

---

1. The ALJ's findings of fact and conclusions of law were adopted by the Commission as its own and were expressly incorporated into the Commission's award. Therefore, we review the ALJ's findings and conclusions as those of the Commission. *See Orr v. City of Springfield*, 118 S.W.3d 215, 217 (Mo.App. S.D. 2003).

2. All statutory references are to RSMo 2000.

Workers' Compensation Law, which provides, in relevant part:

> Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■ Decisions of the Commission "which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding upon us and fall within our province of review and correction." *Merriman v. Ben Gutman Truck Serv., Inc.*, 392 S.W.2d 292, 297 (Mo.1965) (internal quotation marks omitted). Therefore, we "independently review such questions without giving any deference to the Commission's conclusions." *CNW Foods, Inc. v. Davidson*, 141 S.W.3d 100, 102 (Mo.App. S.D. 2004).

■ "The Commission's factual findings, on the other hand, are treated deferentially." *Id.; § 287.495.1.* As to such findings, "the reviewing court does not substitute its judgment for that of the [C]ommission[.]" *Merriman*, 392 S.W.2d at 296. Rather, "[a]bsent fraud, the Commission's factual findings are conclusive on appeal if they are supported by competent and substantial evidence upon the whole record and are not clearly against the overwhelming weight of the evidence," *CNW Foods*, 141 S.W.3d at 102, since "[a]n award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). In this regard, "[t]he phrase 'overwhelming weight of the evidence' connotes evidence that is more persuasive than that which is merely of greater weight or more convincing than the evidence which is offered in opposition to it." *Higgins v. Quaker Oats Co.*, 183 S.W.3d 264, 270 (Mo. App. W.D.2005) (internal quotation marks omitted).

The ALJ conducted an evidentiary hearing on November 3, 2004. At the beginning of the hearing, the parties stipulated that on October 15, 2000, Royal sustained a compensable physical injury during a workplace accident (a slip and fall due to a wet floor) arising out of and in the course of her employment with a Denny's restaurant owned by Advantica Restaurant Group, Inc.; that Denny's is a covered employer under the Workers' Compensation Law whose liability was fully insured by American Casualty Company at the time of the accident; that Denny's received proper notice of the injury and that Royal's workers' compensation claim was timely filed; that Royal's average weekly wage was $297.00 and that the applicable compensation rate for all weekly benefits was $198.01; that Royal had been paid $3,340.17 in temporary total disability benefits through February 19, 2001; and that Royal had been provided medical aid in the amount of $36,813.72.

The parties presented only four issues for determination, the first of which was the nature and extent of any permanent disability resulting from the October 15, 2000 accident. As to this issue, the Commission found that Royal did not sustain

any permanent disability as a result of the workplace injury she suffered when she slipped and fell at Denny's on October 15, 2000, because she failed to show that her slip and fall resulted in any permanent physical injuries to her or was a substantial factor in causing a debilitating psychological condition with which she had subsequently been diagnosed, known as a somatoform (or psychosomatic) disorder.

The second issue was whether Denny's was liable for additional temporary total disability benefits at the rate of $198.01 per week for the period from February 19, 2001, through July 10, 2001. The Commission found that Denny's was liable for an additional twenty weeks of temporary total disability benefits at the rate of $198.01 per week for the period beginning on February 19, 2001, and ending on July 10, 2001, when Royal was finally released from active treatment by an authorized treating physician.[3]

As to the third issue, which was whether Denny's was liable for future medical aid to Royal, the Commission found that Denny's was not liable for any future medical aid to Royal since any and all of Royal's future medical needs will most likely involve the effect of her somatoform disorder, which it had already found had not been proven to be related to her work at Denny's.

The fourth issue to be decided was whether Royal's alleged lack of compliance or unreasonable refusal to comply with medical treatment disqualified her from receiving further benefits under section 287.140.5. The Commission declined to do so, as it had already determined that Royal failed to prove that her somatoform disorder was causally related to her work accident.

On appeal, there is no dispute as to the following relevant facts, as found by the Commission on the basis of competent and substantial evidence upon the whole record. On October 15, 2000, while working at Denny's as a dishwasher and assistant prep cook, Royal slipped and fell on a wet floor. Royal promptly reported to the emergency room at Independence Regional Health Center. Upon physical examination, minimal lumbar tenderness was noted, and her left hip was found to be normal. There was a mild contusion on the lateral aspect of Royal's left knee, and she reported mild pain when her left knee was extended and flexed. X-rays of Royal's left knee were negative. Royal was treated with anti-inflammatory medication, and she was reported to be walking "without much difficulty" when she was released "in good condition."

Three days later, while being treated by physicians at the Business and Industry Health Group, Royal complained of pain in her left knee, left hip, and lower back, and was observed to be walking with a slight left-sided limp. During the course of her follow-up care there, Royal was prescribed narcotic pain medication by Dr. Phillip Ryan to supplement the anti-inflammatory medication she had previously been prescribed. On November 1, 2000, Royal was prescribed crutches to "stabilize her gait and advance [her] degree of weight-bearing as tolerated." On November 6, the Business and Industry Health Group referred Royal for an orthopedic examination with Dr. James Rotramel, who found no anatomical problems with Royal's left leg or lower back and felt there were some indications of symptom magnification by Royal. An MRI and an electrodiagnostic test ordered by Dr. Rotramel were per-

**3.** Respondent has not cross-appealed the Commission's adverse decision on this issue.

formed and came back normal, but Royal continued to report pain.

On November 21, Research Medical Center performed a duplex scan of Royal's legs, which demonstrated a deep-vein thrombosis in her lower left leg. Royal was then admitted to Research Medical Center Hospital for heparin therapy, bed rest, and evaluation of her pulmonary status, where she remained until she was released on December 2, 2000. Although Royal believed that she had a blood clot which traveled from her left leg into her lungs, the medical evidence was not definitive as to whether she actually had a pulmonary embolism. Instead, Royal was diagnosed with early smoking-related chronic obstructive pulmonary disease. Dr. David Wilt was consulted to monitor the progress of Royal's heparin and coumadin therapy, and by November 28, 2000, Royal's leg swelling had decreased and her deep-vein thrombosis was medically resolved.

Nevertheless, Royal continued to report pain in her left leg, claiming that it was broken in two places. Although subsequent X-rays and an orthopedic consultation with Dr. Atul Patel at Research Medical Center demonstrated that she had no such fractures, even up to the time of the evidentiary hearing in November 2004, Royal continued to believe that she fractured her left leg in two places during the fall. Dr. Patel did note that Royal's left leg had begun to atrophy, further noting that the atrophy was of "a questionable type due to disuse." Royal was released from Research Medical on December 2, 2000, with instructions to follow up with Dr. Wilt for coumadin treatment and monitoring, as well as with Dr. Patel.

On January 11, 2001, Dr. Patel noted that it was not clear why Royal was still unable to ambulate or to use her left leg properly. Although he attempted to rehabilitate Royal's left leg, these efforts were largely unsuccessful. By April 2001, Dr. Wilt, who had discontinued Royal's coumadin therapy since her deep-vein thrombosis had been resolved and she no longer needed the drug, had come to the conclusion that Royal's inability to walk was psychological, not physiological, in nature, and recommended that she stop using the crutches. Royal continued her treatment at Business and Industry Health Group until July 10, 2001, when Dr. Ryan, who had also previously advised Royal not to use her crutches, released her from treatment at maximum medical improvement.

Royal has been using crutches and a support brace on her left foot since shortly after the workplace accident in October 2000 and still has a myriad of complaints, including severe pain in her left leg with stiffness and aching, as well as occasional numbness and tingling. She also complains that she continues to try walking on her own without the crutches, but falls down every time she tries, and that she has not been able to use the muscles in her left leg since the accident. However, there are absolutely no physiological reasons (including her deep-vein thrombosis, which was resolved years ago and produced no lasting or permanent physiological effects) for Royal's inability to bear weight on her left leg or to use it normally to walk. Instead, it is undisputed that the sole reason for Royal's unwillingness and/or inability to use her left leg is that she has a severe somatoform disorder of some kind, in which a patient's physical symptoms cannot be fully explained by a known general medical condition or by the direct effects of a substance such as medication, drugs, or alcohol. As a direct result of this disorder, Royal is currently unable to obtain gainful employment, is unable to compete on the open labor market, and

**376**

will remain unemployable without significant psychological improvement.

█ This leads us to Royal's sole point on appeal, in which she argues that "[t]he Commission erred in ... denying [her] permanent total disability benefits based on a finding that [her] psychological condition was unrelated to work because there was sufficient competent evidence in the record [for the Commission to have found] a causal connection between the work-related injury and [her] psychological condition in that a work-related accident can be both a triggering or precipitating event and a substantial factor."

█ The claimant in a workers' compensation case has the burden to prove all essential elements of her claim, *Cook v. St. Mary's Hosp.*, 939 S.W.2d 934, 940 (Mo. App. W.D.1997), *overruled on other grounds by Hampton*, 121 S.W.3d at 226, including "a causal connection between the injury and the job[.]" *Williams v. DePaul Health Ctr.*, 996 S.W.2d 619, 631 (Mo.App. E.D.1999), *overruled on other grounds by Hampton*, 121 S.W.3d at 226. As correctly noted by the Commission in its decision, this case is governed by section 287.020.2, which provides:

> An injury is compensable if it is clearly work related. An injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability. An injury is not compensable merely because work was a triggering or precipitating factor.[4]

"Awards for injuries 'triggered' or 'precipitated' by work are nonetheless proper *if* the employee shows that the work is a 'substantial factor' in the cause of the inju-

ry." *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852, 853 (Mo. banc 1999). Thus, in determining whether a given injury is compensable, a "work-related accident can be both a triggering event and a substantial factor." *Bloss v. Plastic Enters.*, 32 S.W.3d 666, 671 (Mo.App. W.D.2000), *overruled on other grounds by Hampton*, 121 S.W.3d at 225. "Determinations with regard to causation and work-relatedness are questions of fact to be ruled upon by the Commission...." *Id.* Furthermore, in making such determinations, the Commission is the judge of the credibility of witnesses and has discretion to determine the weight to be given expert opinions. *Id.*

Therefore, the Commission correctly framed the factual issue before it as follows:

> The fundamental question which remains is whether work (in this case, the unquestionable work-related fall of October 15, 2000, and resulting left leg and hip injury, including the deep-vein thromboses and treatment therefore) was a significant factor in causing the claimant's psychological disability (*i.e.*, her somatoform disorder).... Under Missouri Workers' Compensation law, a psychological injury allegedly caused by a physical injury is clearly work-related *if* the claimant's work was a *substantial factor* in the cause of the psychological disorder, but an injury is not compensable merely because work was a triggering or precipitating factor. *See* § 287.020.2 (R.S.Mo.2000).

Contrary to Royal's assertion, the Commission *did not* decide that Royal was not entitled to an award of permanent total disability benefits because a work-related

---

4. We note, as did the Commission, that a different statutory test applies when a mental injury is alleged to have resulted from work-related stress that does not arise from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination, or any similar action taken in good faith by an employer. *See* §§ 287.120.8 & .9. These statutes are not implicated here.

accident resulting in physical injury cannot be both a triggering or precipitating event and a substantial factor in the subsequent development of a disabling psychological disorder. What the record actually shows is that the Commission denied Royal an award of permanent total disability benefits because it was not persuaded by the limited evidence she presented at the hearing to prove her contention that the October 2000 slip-and-fall was a substantial factor in causing the development of her disabling somatoform disorder, and because that disorder was not compensable merely due to the fact that the October 2000 slip-and-fall was a triggering or precipitating factor. As clearly and cogently explained by the Commission in its award:

> [We] do find, based on the circumstantial evidence in this case (*i.e.*, the close spatial and time relationship between the accident and the ensuing mental disorder focused primarily on the claimant's left leg), that the work-related accident and injury to the claimant's left leg was somehow and in some way a *precipitating factor* in causing her psychological disorder. However, [we] *cannot* find that work (in this case the October 15, 2000, fall, the injury she sustained at that time to her leg and low back, and the deep-vein thrombosis which developed or the medical treatment she received) was a substantial factor in causing her somatoform disorder. There simply was no expert testimony or evidence as to how a trauma or deep-vein thrombosis or anxiety about possible recurrences can be a substantial factor in causing a somatoform disorder.

With this distinction in mind, we now proceed to review the record evidence bearing on the decisive factual issue of causation. The Commission found that the only expert testimony presented by Royal "which conceivably *could* establish causation between the work-related accident

and [her] psychological disorder" was that of Dr. Sheba Khalid (a licensed psychiatrist in private practice), who opined that the physical injuries Royal sustained on October 15, 2000, were substantial factors in the development of her subsequent psychological impairment from her somatoform disorder. As to this evidence, the Commission noted that Dr. Khalid failed to provide a "helpful explanation as to how [Royal's] somatization disorder was related to or caused by the work-related accident." The Commission went on to observe that the following deposition testimony from Dr. Khalid on cross-examination by counsel for Denny's constituted her only attempt to explain the basis for her conclusion that a causal connection existed:

> Q.: [H]ow in the world can you support a statement that this accident of October 15, 2000, was a substantial factor in causing this diagnosis of psychiatric impairment that you come up with?
>
> A.: Because there's no evidence that there was anything before. So this is within a reasonable degree of medical certainty this all took place after that injury. Makes a lot of sense to me.

In evaluating this testimony, which improperly confuses chronology with causality and does "not constitute 'substantial evidence of causation,'" *Henges Co. v. Ford Motor Co.*, 444 S.W.2d 416, 419 (Mo. 1969) (quoting *Green v. Ralston Purina Co.*, 376 S.W.2d 119, 124 (Mo.1964)), the Commission stated:

> This explanation is simply insufficient to persuade [us] of any significant connection between Claimant's October 15, 2000, accident at work and her somatoform disorder manifested most obviously in her inability to walk. While it is true that the claimant had no difficulty walking before the October 15th injury and did have problems walking within two

weeks of the work-related accident, this close relationship in time between the injury and the complained-of condition does not in and of itself establish causation.... [We are] unconvinced that the work-related accident and physical injury to the claimant's left knee and leg or the resulting deep-vein thrombosis was a significant cause of [her] psychological disorder.... A conclusory but unsupported statement that work was a significant factor in causing the claimant's mental condition simply is not enough to carry the claimant's burden of proof. [We] need further explanation as to the relationship between the work-related injury and the mental condition. The record lacks any explanation as to how work was a substantial factor in causing the claimant's somatoform disorder.

These findings and conclusions are all obviously well within the Commission's prerogative to "determine what weight it will accord expert testimony on medical causation," *Bloss*, 32 S.W.3d at 672, and also demonstrate that the Commission properly applied the law governing Royal's claim for permanent total disability benefits under Missouri's Workers' Compensation Law.

Royal does not refute any of this in her brief. Instead, she relies on cases such as *Cahall v. Riddle Trucking, Inc.*, 956 S.W.2d 315 (Mo.App. E.D.1997), *overruled on other grounds by Hampton*, 121 S.W.3d at 226, for the proposition that "[w]here an employee sustains an injury arising out of and in the course of his employment, every natural consequence that flows from the injury, including a distinct disability in another area of the body, is compensable as a direct and natural result of the primary or original injury." *Id.* at 322. The fatal flaw in this approach, however, is that Royal's somatoform disorder is a complex

psychological and/or psychiatric condition, not simply a self-evident "natural consequence" or "direct and natural result" of the work-related physical injuries she sustained on October 15, 2000. As such, expert testimony was required to establish causation, inasmuch as "the causation of a mental condition is not as apparent as that of many physical conditions and ... proof of it would almost always be dependent on expert testimony." *Tibbs v. Rowe Furniture Corp.*, 691 S.W.2d 410, 413 (Mo.App. S.D.1985), *superseded by statute on other grounds as stated in Kasl*, 984 S.W.2d at 855, and *overruled on other grounds by Hampton*, 121 S.W.3d at 231.

Furthermore, the record amply supports the Commission's conclusion that Dr. Khalid, who was Royal's sole expert witness as to the causation of her somatoform disorder, failed to provide any legitimate, persuasive explanation as to how work was a substantial factor in causing Royal's somatoform disorder, making only a conclusory and unsupported statement that was insufficient to carry Royal's burden of proof.

For all of the above reasons, we hold that the Commission's decision denying Royal permanent total disability benefits under Missouri's Workers' Compensation Law is supported by competent and substantial evidence on the whole record and is not contrary to the overwhelming weight of the evidence.[5] Accordingly, the Commission's decision is affirmed.

All concur.

---

5. In view of this disposition, we need not address the other reasons given by the Commission in support of its award. Likewise, we need not determine whether Royal's alleged