**Susan VAN WINKLE, Appellant,**

v.

**LEWELLENS PROFESSIONAL CLEANING, INC.; Treasurer of the State of Missouri—custodian of the Second Injury Fund, Respondents.**

**No. WD 68669.**

Missouri Court of Appeals, Western District.

July 29, 2008.

 

Vicki A. Dempsey, Hannibal, MO, for Appellant.

Jeff F. Stigall, and B. Joyce Yeager, Kansas City, MO; for Respondent, Lewellens Professional Cleaning, Inc.

Maureen T. Shine, Kansas City, MO, for Respondent, Treasurer of the State of Missouri.

Before VICTOR C. HOWARD, C.J., JOSEPH P. DANDURAND, and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellant Susan Van Winkle appeals the Final Award Denying Compensation issued by the Labor and Industrial Relations Commission. The Commission's Final Award upheld a decision of an Administrative Law Judge in the Division of Workers' Compensation which denied Van Winkle's claim for workers' compensation benefits. For the reasons stated below, we reverse and remand to the Commission for further proceedings.

## I. Factual Background

On April 4, 2003, Van Winkle worked for Respondent Lewellens Professional Cleaning, Inc., a company that provided cleaning services for Northeast Missouri Regional Hospital in Kirksville, Missouri. Van Winkle's job at that time included cleaning emergency rooms and patient rooms. One of her specific tasks when cleaning a patient room was to strip the beds of their sheets, clean the bed, and then put clean sheets on the bed.

Van Winkle was cleaning her third patient room on April 4, 2003, when the incident in question occurred. After cleaning the bed, Van Winkle went out to the hallway to get fresh bedding, which she then placed in a chair to the left of her.

When Van Winkle subsequently turned to get the bedding to place it on the bed, she heard a pop in her left hip and shortly thereafter felt a severe burning sensation and sharp pains in her left leg. Within minutes, Van Winkle was experiencing significant pain in her back and left leg. Prior to April 4, 2003, Van Winkle had never experienced any medical issues or problems with her back, hip or left leg.

Immediately after sustaining the injury, Van Winkle reported the incident to her supervisor. After filling out some paperwork, she was taken to Dr. James Smith's office where she received medical treatment for her injury.

Van Winkle saw Dr. Smith on four occasions, during which time she took pain medication and muscle relaxants. Because the pain did not subside, Dr. Smith referred Van Winkle to Dr. Browning, an orthopedist who prescribed physical therapy. Physical therapy did not ameliorate her pain either, and therefore Van Winkle was referred to Dr. Tony Smith, who discovered cysts near Van Winkle's spine after taking an MRI and CAT scan. These cysts were found to be a congenital condition that existed prior to the April 2003 incident. Dr. Smith attempted to treat Van Winkle's pain with steroid injections, but these treatments did not provide lasting relief.

On July 22, 2003, Van Winkle was treated by a neurosurgeon, Dr. Michael Y. Oh. Dr. Oh subsequently performed two surgeries on Van Winkle. Dr. Oh was hopeful that operating on the cysts would alleviate Van Winkle's chronic back and leg pain. However, after the two surgeries, Van Winkle continued to experience the same medical issues. Accordingly, it was Dr. Oh's conclusion that the preexisting cysts were not the cause of her continuing chronic pain but, instead, that her pain was caused by a musculoskeletal strain.

On May 3, 2003, Van Winkle filed her claim for compensation with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation. In her claim, Van Winkle sought permanent partial disability or, in the alternative, permanent total disability. On July 25, 2006, the ALJ held a hearing on the claim.[1] At the hearing, Van Winkle testified that she still suffers from pain that prevents her from doing daily activities such as household chores, and that her condition interferes with her ability to sleep through the night or to stand or walk for any prolonged period.

In addition, a variety of expert medical testimony and evidence regarding Van Winkle's condition was submitted. Dr. Oh's deposition was submitted into evidence, along with his notes and charts, which detailed his treatment of Van Winkle and his expert opinions of Van Winkle's medical condition and its cause. Van Winkle also submitted the deposition of an expert witness, Dr. Jerome Levy, in which Dr. Levy offered his opinions concerning her medical condition.

On August 31, 2006, the ALJ issued an Award containing Findings of Fact and Rulings of Law. In his award, the ALJ concluded that Van Winkle should receive no workers' compensation benefits because she did not sustain a compensable "injury" from an "accident" within the meaning of § 287.020.

Thereafter, the Labor and Industrial Relations Commission issued its Final Award on May 2, 2007. The Final Award denied compensation to Van Winkle, finding "that the award of the administrative

1. Prior to the hearing, the parties stipulated that both Van Winkle and Lewellens were covered under the Missouri Workers' Compensation statutes.

law judge is supported by competent and substantial evidence and was made in accordance with the Missouri Workers' Compensation Act." The Commission's Final Award included a dissenting opinion by Commissioner John J. Hickey, which explained in detail why he would reject the ALJ's conclusions and award compensation.

Van Winkle appeals to this Court, asserting four Points Relied On.[2] In Point I, she argues that the Commission erred in substituting its opinion for the uncontroverted medical evidence when it concluded that Van Winkle's pre-existing cysts caused her medical condition. In Point II, Van Winkle states that the Commission erred in concluding that she had not sustained an "accident" as defined in § 287.020.2, based on its view that the incident needed to involve "significant force" to fall within the statutory definition. In Point III, Van Winkle argues that the Commission erred in finding that the physical twisting which caused her injury could have happened anywhere, and that she accordingly had not sustained an "injury" under § 287.020.3. Finally, in Point IV, Van Winkle argues that even if her cysts were the cause of her symptoms, the Commission erred in denying her claim for benefits because the exacerbation of a pre-existing condition can give rise to a compensable claim. For the reasons stated

below, we reverse and remand this matter to the Commission.

## II. Standard of Review

Our standard of review is governed by § 287.495.1, which provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

"A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e. whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* at 223. In employing this analysis, we are not required "to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Id.*[3]

---

**2.** It was initially unclear whether Van Winkle had filed her notice of appeal in a timely fashion with the Commission, because the date on which her counsel mailed the notice of appeal was not clear from the record. Accordingly, the case was remanded to the Commission for a specific finding as to when the notice of appeal should be deemed to have been filed. *See, e.g., Powell v. Catholic Charities of St. Louis,* 202 S.W.3d 55, 56 (Mo.App. E.D.2006); *Dixon v. Stoam Indus., Inc.,* 216 S.W.3d 684, 686–88 (Mo.App. S.D.2006) (both remanding to the Commission for fact finding

in similar circumstances). On November 13, 2007, the Commission issued its order finding that Van Winkle's notice of appeal was timely filed on May 30, 2007. No party has challenged this finding.

**3.** In clarifying the proper standard of review, *Hampton* overruled a large number of prior appellate decisions on this discrete point of law. 121 S.W.3d at 223, 224–32. We cite and rely on several such cases in this opinion for legal propositions unrelated to the standard of review, without further notation.

■ As previously mentioned, the Commission (over the dissent of one of its members) affirmed the decision of the ALJ that awarded no compensation to Van Winkle, and in doing so adopted the ALJ's findings and conclusions. "When the Commission affirms and adopts the ALJ's award, we review the ALJ's findings as adopted by the Commission." *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 48 (Mo.App. W.D.2007).

■ "This Court's interpretation of the workers' compensation act is informed by the purpose of the act, which is to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment." *Schoemehl v. Treasurer of State*, 217 S.W.3d 900, 901 (Mo. banc 2007). "Accordingly, the law 'shall be liberally construed with a view to the public welfare.'" *Id.* (quoting § 287.800). "Any doubt as to the right of an employee to compensation should be resolved in favor of the injured employee." *Id.*

### III. Analysis

We agree with the ALJ "that the issues of 'accident,' 'injury,' and 'causation' are intertwined" under the law and the facts of this case; nevertheless, because each issue is potentially dispositive of Van Winkle's claim, we will undertake to analyze these issues separately.

As a preliminary matter, we note that the legislature substantially revised the text of § 287.020 in 2005. In addition to amending the statute's text, the 2005 amendments expressly abrogated various judicial decisions interpreting § 287.020. *See* § 287.020.10. Lewellens does not dispute Van Winkle's assertion that this case should be decided under the law as it existed prior to the 2005 amendments. *See also Lawson v. Ford Motor Co.*, 217 S.W.3d 345, 349 (Mo.App. E.D.2007) (con-cluding that 2005 amendments do not apply retroactively to injury pre-dating their enactment). Based on the parties' apparent agreement, we decide this case under the statutes in force on April 4, 2003, the date of Van Winkle's injury, and the interpretations of those statutes prevailing independent of the 2005 amendments.

### A. Whether Van Winkle Was Involved in an "Accident" pursuant to § 287.020.2.

At the time of the relevant incident, § 287.020.2 provided:

The word **"accident"** as used in the chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen identifiable event or series of events happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. An injury is compensable if it is clearly work related. An injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability. An injury is not compensable merely because work was a triggering or precipitating factor.

The ALJ noted that Van Winkle "has identified an 'event' (a hip 'pop' and pain associated with a benign physical movement), and the occurrence of that 'event' is not disputed by [Lewellens]." The ALJ then focused on the fact that, under the statute, an "accident" must be "an unexpected or unforeseen identifiable event ... happening suddenly and violently." § 287.020.2. In finding that Van Winkle's claim was not a compensable "accident," the ALJ concluded that the statute's "requirement that the event happen 'violently' suggests that some significant force be applied to the body for an 'accident' to occur."

As Commissioner Hickey's dissenting opinion pointed out, however, "violently" is a term of art that has been given a broad meaning in this context. More than 75 years ago, the Missouri Supreme Court interpreted the phrase "suddenly and violently" in a predecessor workers' compensation law, and held that it merely required "that something must happen which, at the time, is sufficiently violent to produce an effect that can be noticed or observed by human senses." *Schulz v. Great Atl. & Pac. Tea Co.*, 331 Mo. 616, 56 S.W.2d 126, 128 (1932). This Court has interpreted the phrase "violently" in § 287.020.2 in like fashion, stating that "[v]iolently is a relative term having a connotation sufficiently broad to cover causes found in that vast area between the most minor compensable injury and accidental death, and is properly descriptive of any cause efficient in producing a harmful result." *Raef v. Stock–Hartis, Inc.*, 416 S.W.2d 201, 205 (Mo.App.1967). More recently, we reaffirmed this interpretation by stating that " 'the injury need not result from any unusual or abnormal event.' " *Bennett v. Columbia Health Care*, 80 S.W.3d 524, 529 (Mo.App. W.D.2002)(quoting *Winsor v. Lee Johnson Constr. Co.*, 950 S.W.2d 504, 509 (Mo.App. W.D.1997)); *see also Todd v. Goostree*, 493 S.W.2d 411, 417, 421 (Mo.App.1973) (following *Raef,* and holding that compensable "accident" need not involve " 'violence to the physical structure of the body' "; instead, " 'violence' must be read as 'harm,' " and thus "anxiety neurosis" triggered by discovering dead body of friend and co-worker during work could constitute a compensable "accident").[4]

■ Accordingly, the ALJ clearly misstated the law when he held that " 'violently' suggests that some significant force be applied to the body for an 'accident' to occur." There is no requirement under the version of § 287.020.2 applicable here that an "accident" result from "significant force applied to the body." Rather, where (as here) a workplace incident causes an appreciable, harmful effect at the time it occurs, the "suddenly and violently" requirement of § 287.020.2 has been satisfied.

When reviewing the ALJ's overall analysis, it is clear that his misreading of the "accident" definition had a major impact on his conclusion that Van Winkle was not entitled to benefits. Thus, the ALJ found that "[t]here is no proof whatsoever that any significant force was applied to Claimant's body in the 'event,' and, in fact, the evidence proves that there was minimal, if any, force applied to Claimant's body." Later, the ALJ observed that Van Winkle's "physical movement preceding the 'pop' and subsequent pain was benign, and in no way violent."

■ Because "significant force" need not occur in order for one to be involved in an "accident" under § 287.020.2, the Commission erred in using this as a basis to conclude that Van Winkle's work incident did not constitute an "accident."

**B. Whether Van Winkle Sustained an "Injury" pursuant to § 287.020.3.**

Section 287.020.3, as it existed in April 2003, provided:

(1) In this chapter the term "injury" is hereby defined to be an injury which has arisen out of and in the course of employment. The injury must be incidental to and not independent of the relation of employer and employee. Ordinarily, gradual deterioration or progressive degeneration of the body caused by aging shall not be compen-

---

**4.** *Overruled on other grounds, Kasl v. Bristol* *Care, Inc.,* 984 S.W.2d 852 (Mo. banc 1999).

sable, except where the deterioration or degeneration follows as an incident of employment.

(2) An injury shall be deemed to arise out of and in the course of employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing injury; and

(b) It can be seen to have followed as a natural incident of the work; and

(c) It can be fairly traced to the employment as a proximate cause; and

(d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life[.]

In his opinion, the ALJ invoked § 287.020.3(2)(d), and concluded that Van Winkle's "injury did come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life (if, indeed, such a benign physical movement can be characterized as a 'hazard' or 'risk' at all)." The ALJ found that Van Winkle's twisting motion could not constitute an "injury" because "[a]ny worker, outside of his or her employment life, would perform the same benign physical movement dozens of times each day—getting into and out of a vehicle, getting into and out of bed, getting into and out of the bathtub, getting into or out of a seated position, and many others."

█ In addressing this issue, we do not write on a blank slate. Instead, under decisions we are bound to follow, a worker may sustain a compensable "injury" within the meaning of § 287.020.3 even though the individual is engaged in a physical action also frequently performed in everyday, non-working life. Thus, in *Bennett v. Columbia Health Care*, 80 S.W.3d 524 (Mo.App. W.D.2002), we held "that the Commission erred in concluding that an injury caused or aggravated by walking could not be considered as 'arising out of' [claimant's] employment." *Id.* at 531. While walking is an activity done routinely outside of employment life, we nonetheless concluded that it could constitute an "injury" because "walking, both on level floors and traversing stairs, was an integral part of [claimant's] job activities [and] [claimant] was engaged in activities incidental to her duties at the time she experienced each 'pop' or 'giving away' of her knee." *Id.*

*Bennett* relied heavily on the Missouri Supreme Court's decision in *Drewes v. Trans World Airlines, Inc.*, 984 S.W.2d 512 (Mo. banc 1999), in which a claimant was "carrying her lunch through a break room, when she fell and injured her ankle." *Bennett*, 80 S.W.3d at 530 (citing *Drewes*, 984 S.W.2d at 514). We noted that the claimant in *Drewes* did not face "any particular hazard" when sustaining her injury. *Id.* (citing *Drewes*, 984 S.W.2d at 514). Ultimately, in *Drewes*, the Supreme Court held that claimant's injury was compensable because it was sustained "in the course of her employment." 984 S.W.2d at 515. In so concluding, the *Drewes* majority expressly rejected Judge Covington's analysis in dissent that the claimant "was no more likely to fall in the break room during her lunch break that in her 'normal nonemployment life.'" *Id.* at 516 (quoting § 287.020.3(2)(d)). *See also Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852, 854 (Mo. banc 1999) (finding compensable "injury" where claimant fell after standing up out of a chair, with a foot that had "fallen asleep"); *DeVille v. Hiland Dairy Co.*, 157 S.W.3d 284, 290 (Mo.App. S.D.

2005) (following *Drewes*, and holding that worker "was not 'equally exposed' outside of his employment to the risk of twisting his knee as he turned to leave the fellow employee conversation site and walk to his work area").[5]

 The Commission erred in concluding that, because Van Winkle was engaging in an ordinary daily activity, she could *not have sustained an "injury"* within the meaning of § 287.020.3. As in *Drewes, Kasl, Bennett*, and *DeVille*, the activity that caused Van Winkle's injury (turning to grab clean linens to place on a hospital bed) was integral to her job duties, even though she may have regularly engaged in similar motions in her non-working life. Because Van Winkle was "engaged in activities incidental to her duties at the time she experienced [the] 'pop,'" *Bennett*, 80 S.W.3d at 531, § 287.020.3(2)(d) did not bar her from receiving benefits. The Commission's contrary conclusion is reversed.

## C. Whether Van Winkle Proved Her Job Caused Her "Injury."

 "The claimant in a workers' compensation case has the burden to prove all essential elements of her claim, including a causal connection between the injury and the job." *Royal v. Advantica Rest. Group, Inc.*, 194 S.W.3d 371, 376 (Mo.App. W.D.2006) (citations and quotations omitted). "Determinations with regard to causation and work relatedness are questions of fact to be ruled upon by the Commission." *Id.* (citing *Bloss v. Plastic Enters.*, 32 S.W.3d 666, 671 (Mo.App. W.D.2000)). Under the statute, "[a]n injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability." § 287.020.2. On the other hand, "[a]n injury is not compensable merely because work was a triggering or precipitating factor." *Id.* "Awards for injuries 'triggered' or 'precipitated' by work are nonetheless proper *if* the employee shows the work is a 'substantial factor' in the cause of the injury." *Kasl*, 984 S.W.2d at 853. "Thus, in determining whether a given injury is compensable, a 'work related accident can be both a triggering event and a substantial factor.'" *Royal*, 194 S.W.3d at 376 (quoting *Bloss*, 32 S.W.3d at 671). *See Kasl*, 984 S.W.2d at 854 (affirming Commission finding that employment was a "substantial factor" in causing injury where employee fell after rising from chair because her foot had "fallen asleep"; employee's "'required work ... caused her foot to fall asleep,'" and employee was rising from chair to perform a job requirement); *DeVille*, 157 S.W.3d at 290 (finding that worker's "act of turning to the right and 'twisting' his knee as he started toward his work area was a 'substantial factor' in causing his injury").

In deciding the causation question, the ALJ did not apply these *governing standards to the evidence before him*. Instead, the ALJ concluded that *"[l]ogic and common sense lead me to believe that it would be unnatural* for such a benign physical movement to cause such a significant disability." (Italics added.)

 "[T]he question of causation is one for medical testimony, without which a finding for claimant would be based upon mere conjecture and speculation and not on substantial evidence." *Elliott v. Kansas City, Mo., Sch. Dist.*, 71 S.W.3d 652, 658 (Mo.App. W.D.2002). Accordingly,

---

**5.** *Drewes, Kasl*, and *Bennett*, as well as "all cases citing, interpreting, applying, or following those cases," were expressly abrogated by the legislature in 2005, at least as to certain issues. § 287.020.10. As discussed *supra*, however, the parties do not dispute that pre-2005 law applies to the resolution of this appeal.

where expert medical testimony is presented, "logic and common sense," or an ALJ's personal views of what is "unnatural," cannot provide a sufficient basis to decide the causation question, at least where the ALJ fails to account for the relevant medical testimony. *Cf. Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 600 (Mo. banc 1994) ("The commission may not substitute an administrative law judge's opinion on the question of medical causation of a herniated disc for the uncontradicted testimony of a qualified medical expert.").

The ALJ's conclusion that Van Winkle had failed to prove causation was based on his finding "that Claimant's symptoms are coming from the Tarlov cysts, and not from an injury to a disc, vertebra, muscle, or tendon." This finding is not supported by competent and substantial evidence, however. Dr. Oh's testimony directly contradicts the ALJ's determination that Van Winkle's chronic pain was caused by the cysts:

Q. Now, based on your training, experience, education, and your actual treatment of [Van Winkle], what's your final diagnosis regarding [Van Winkle's] medical problem?

A. She falls in the category of chronic low back and lower extremity pain. She does have a diagnosis of perineural cysts as well. But again, at the end of my evaluation/treatment I did not think that the perineural cysts were related to her pain.

Dr. Levy also testified that the cysts were not the cause of Van Winkle's chronic ongoing pain:

Q. You don't think the cysts themselves are the prevailing factor in her symptoms?

A. No, because I think she had them, as we said earlier, for a long time and they weren't causing her any problem.[6]

■ If the ALJ was unable to identify what the medical experts agreed was the cause of Van Winkle's chronic pain, he could not make a proper determination under § 287.020 as to whether her work duties were a "substantial factor" in causing her injury.[7]

■ Ultimately, as in *Bennett*, "[b]ecause the ALJ and the commission did not consider or address all the pertinent issues prescribed by Section 287.020, including substantial factor and proximate cause, the case must be remanded[,] [since] [t]here remain serious questions as to whether [Van Winkle's] work duties were a substantial factor in causing her injury." 80 S.W.3d at 532. " 'Determinations with regard to causation and work relatedness are questions of fact to be ruled upon by the Commission.' " *Royal*, 194 S.W.3d at 376 (quoting *Bloss*, 32 S.W.3d at 671). Accordingly, because the ALJ failed to make a finding of fact concerning causation within the bounds of the governing legal standards and the evidence before him, we must remand this matter to the Commission for further proceedings.[8]

6. It is true that Dr. Levy testified that Van Winkle's cysts contributed to Van Winkle's initial symptoms because the cysts were impinging on a nerve root; however, Dr. Levy's testimony makes clear that his ultimate diagnosis was that Van Winkle currently suffers from chronic lumbrosacral sprain.

7. In her Point IV, Van Winkle argues in the alternative that, if her condition was caused by her cysts, that the exacerbation of this

preexisting condition would itself be a compensable injury. Because we find that there was insufficient evidence to find that the cysts caused Van Winkle's injury, we need not address this alternative argument.

8. We note that, to the extent the ALJ purported to address the "substantial factor" question, his finding is directly contrary to the evidence. Thus, the ALJ found that "the testimony of Dr. Levy [ ] makes it clear that the

## IV. Conclusion

The Labor and Industrial Commission's Final Award Denying Compensation is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

All concur.

benign physical movement which occurred at Claimant's workplace on April 4, 2003 was no more than a mere 'triggering or precipitating factor' in causing her disability." But Dr. Levy's testimony unambiguously supports *the opposite* conclusion:

Q. Would you say that the twisting then was the prevailing factor resulting in the pain and subsequent medical condition?
A. Exactly. That's exactly what I would say.
Q. Not just a triggering event, but the prevailing factor?
A. Exactly.