IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 ROBERT MARCH, )
 )
 Appellant, )
 v. )
 WD84377
 )
 TREASURER OF THE STATE OF )
 OPINION FILED:
 MISSOURI - CUSTODIAN OF THE )
 August 31, 2021
 SECOND INJURY FUND, )
 )
 Respondent. )

 Appeal from the Labor and Industrial Relations Commission

 Before Division Three: Edward R. Ardini, Jr., Presiding Judge, and
 Mark D. Pfeiffer and W. Douglas Thomson, Judges

 Introduction

 This workers’ compensation case serves as a reminder that the question of causation is a

medical question. Further, while we defer to the Labor and Industrial Relations Commission’s

(“Commission”) credibility determinations—including as to expert medical testimony—and the

Commission is free to choose between conflicting expert medical opinions or to otherwise choose

to disbelieve all of the expert medical opinions, where the Commission finds that certain

uncontradicted expert medical testimony as to causation is credible, it is not entitled to supply its

own contrary lay opinion as to causation absent expert medical testimony to support that contrary
opinion. Here, the Commission has done just that, Appellant Robert March (“Employee”)

challenges the sufficiency of evidence to support the Final Award Denying Compensation (“Final

Award”), and we conclude that the Final Award must be reversed and remanded to the Commission

for further proceedings as directed in today’s ruling.

 Factual Background

 Employee (born 1/3/1962) began working for Milbank Manufacturing (“Employer”) in

1996. Employee is 6 feet 3 inches tall, is morbidly obese (450 to 500 pounds), and has a high

school education.

 Employer manufactures electrical junction boxes and railroad crossing boxes. Employee’s

job responsibility was to fabricate metal electrical boxes via metal inert gas welding and stick

welding followed by sanding the finished product with a 20-pound grinder. Employee’s repetitive

work averaged fabrications of between 300 and 400 metal boxes per day. The boxes ranged in

weight from 10 to 500 pounds.

 The Last (i.e., Primary) Injury

 Sometime around April 2015, Employee started having problems with his upper

extremities, complaining of bilateral hand problems and shooting pains in his arms, shoulders, and

neck area. Employer sent Employee to Dr. Thomas Winston, who concluded that Employee’s

bilateral upper extremity complaints were work-related and provided medical treatment to

Employee, including an injection into Employee’s right shoulder. Employee was later seen by

Dr. Jerry Meyer, Dr. Michael Waldschmidt, and Dr. William Hopkins, all of whom agreed that

Employee’s bilateral carpal tunnel entrapment upper extremity injuries, at maximum medical

improvement, were such that Employee’s medical restrictions were: no overhead work; not lift

over 20 pounds; not perform repetitive tasks with his arms; not use equipment that vibrates; not

 2
stand or walk more than twenty minutes at a time; and not sit or stand continuously for more than

an hour at a time.

 Employee settled his permanent partial disability claim for his bilateral upper extremity

injuries with Employer for an impairment rating of 27.5% to the body as a whole (110 weeks of

permanent partial disability).

 Preexisting Medical Conditions

 Employee suffered from: morbid obesity for many years prior to his primary injury; carpal

tunnel syndrome requiring surgery in 1989; thyroid issues requiring surgery in 1996;

hypothyroidism and hypertension requiring treatment in 2010-11; transient ischemic attack in

2011; hemorrhoids condition requiring surgery in 2011; left leg laceration during a hunting trip

requiring topical treatment for a stasis ulcer in 2012-13 and again in February of 2015; and left

shoulder rotator cuff injury requiring repair in 2014.

 All of this said, the most significant of Employee’s preexisting medical conditions (and

relevant to our discussion today) is his bilateral lower extremity condition in which he initially

began exhibiting symptoms of radiating pain down both legs and into his swollen ankles in 2005

secondary to morbid obesity and venous varicosities in association with obesity. But, given the

work responsibilities performed for Employer over the years,1 Employee’s bilateral lower

extremity condition continued to deteriorate prior to Employee’s primary injury, although

Employee worked continuously for Employer until his upper extremity injuries in 2015.

Ultimately, Dr. Hopkins separated out non-work-incurred versus work-incurred percentages of

 1
 Employer sometimes accommodated Employee by allowing him to sit to perform his job tasks and, at other
times during his work history, more standing was required of Employee. Employee’s bilateral lower extremity
condition was unquestionably a hindrance to employment; however, Employee was never unable to perform the
responsibilities of his job with Employer due to his bilateral lower extremity condition. It was not until the subsequent
bilateral upper extremity condition (i.e., primary injury) that Employee became unemployable in the open labor
market.

 3
preexisting disability to Employee’s bilateral lower extremities and opined that Employee’s

preexisting “cumulative work-incurred injuries” to his bilateral lower extremities were 30% to

each leg (rated at the 160-week level—or 48 weeks per leg) plus a 15% loading factor applied

bilaterally (an additional 12 weeks per leg).

 Permanent Total Disability

 Given the testimony of multiple vocational experts as well as the uncontradicted expert

medical opinion of Dr. Hopkins, there is no dispute that Employee is permanently and totally

disabled.

 Dr. Hopkins ultimately concluded that the combination of Employee’s preexisting and

work-incurred bilateral lower extremity disability when combined with his primary bilateral upper

extremity injury and resulting permanent partial disability resulted in Employee’s permanent total

disability (“PTD”). Of import, there was no other medical expert besides Dr. Hopkins who opined

on the cause of Employee’s PTD.

 The Administrative Law Judge (“ALJ”) and Commission both acknowledged Employee’s

PTD, but both administrative tribunals also concluded that the Treasurer of the State of Missouri -

Custodian of the Second Injury Fund (“SIF”) was not liable for the payment of PTD compensatory

payments to Employee, albeit for different reasons. But, the “differences” are of consequence to

our discussion today.

 ALJ’s Conclusion

 The ALJ’s findings in his ruling essentially concluded that he did not find Dr. Hopkins’s

opinion to be credible as to the medical cause of Employee’s PTD and, hence, expressly concluded

that “[Employee] has not met his burden of proof to establish Second Injury Fund liability under

 4
the current pronouncement of Chapter 287.” Employee appealed the ALJ’s ruling to the

Commission.

 Commission’s Conclusion

 With regard to the ALJ’s rationale rejecting Dr. Hopkins’s expert medical opinion as to

the cause of Employee’s permanent and total disability, the Commission expressly stated: “We

disavow these findings.”

 In fact, the Commission expressly noted in its Final Award that the Employee had

presented credible evidence “to establish Employee’s theory of the case.” In other words, the

Commission found Dr. Hopkins’s expert medical opinion as to the cause of Employee’s PTD to

be plausible and credible; however, a majority of the Commission’s three-member panel concluded

that “it was equally likely that employee’s preexisting injuries (without the addition of the primary

injury) resulted in employee’s permanent and total disability.”2

 As this opinion discusses, there is a difference between concluding that the uncontradicted

expert medical opinion testimony on causation is not credible versus credible but equally likely to

another cause in which there is no expert medical testimony to support the Commission’s

alternative theory of the case as to causation.

 Further facts as relevant to our analysis are presented below.

 Sufficiency-of-the-Evidence Challenge

 In Employee’s point on appeal, Employee asserts a sufficiency-of-the-evidence challenge

to the Commission’s Final Award.

 2
 One of the three members of the Commission dissented with the majority’s Final Award arguing that, since
the majority found Dr. Hopkins’s expert medical testimony on causation to be credible and reliable, the majority was
not in a position to ignore it. We agree, at least to the extent that there is no other expert medical testimony on the
topic of causation that supports the lay opinion reflected in the Commission’s Final Award.

 5
 Standard of Review

 On appeal, we review the Commission’s decision to ensure it is “‘supported by competent

and substantial evidence.’” White v. ConAgra Packaged Foods, LLC, 535 S.W.3d 336, 338 (Mo.

banc 2017) (quoting MO. CONST. art. V, § 18).

 The Commission’s decision will . . . be disturbed [only] if: (1) the Commission
 acted without or in excess of its powers; (2) the award was procured by fraud; (3)
 the facts found by the Commission do not support the award; or (4) there was not
 sufficient competent evidence in the record to warrant the making of the award.

Id.; see also Cosby v. Treasurer, 579 S.W.3d 202, 206 (Mo. banc 2019) (stating the same).

 “‘We . . . review the findings and award of the Commission rather than those of the ALJ,

to the extent that it departs from the ALJ’s ruling.’” Jefferson City Country Club v. Pace, 500

S.W.3d 305, 311 (Mo. App. W.D. 2016) (quoting Small v. Red Simpson, Inc., 484 S.W.3d 341,

344 (Mo. App. W.D. 2015)).

 Upon review of the Commission’s decision, we view the evidence objectively and
 not in the light most favorable to the decision of the Commission. Where a
 Commission’s decision is based on its interpretation and application of the law, we
 review the Commission’s conclusions of law and its decision de novo. However,
 we defer to the Commission’s factual findings on issues such as the credibility of
 witnesses and the weight given to their testimony. This includes the Commission’s
 evaluation of expert medical testimony. The Commission, as the finder of fact, is
 free to believe or disbelieve any evidence.

Treasurer of the State of Mo. v. Majors, 506 S.W.3d 348, 352 (Mo. App. W.D. 2016) (internal

quotation marks omitted) (citations omitted).

 Analysis

 In Employee’s sole point on appeal, Employee challenges the sufficiency of the evidence

supporting the Commission’s Final Award. Employee asserts that the issue determining SIF

liability was one of causation, there was only one uncontradicted expert medical opinion on the

topic of causation, the Commission first credited that expert medical opinion as plausible, but then

 6
the Commission erroneously asserted its own lay opinion on the topic of causation to deny

compensation to Employee in its Final Award and such error requires reversal. We agree.

 Statutory Conditions for SIF Liability

 In relevant part, Chapter 287 defines SIF liability for permanent and total disability benefits

to an injured employee as follows:

 Under [§ 287.220.3, RSMo. 2016], employees now must meet two conditions to
 make a compensable PTD claim. First, the employee must have at least one
 qualifying preexisting disability. § 287.220.3(2)(a). To qualify under the first
 condition, the preexisting disability must be medically documented, equal to at least
 50 weeks of permanent partial disability, and meet one of the following criteria:

 (i) A direct result of active military duty in any branch of the
 United States Armed Forces; or

 (ii) A direct result of a compensable injury as defined in
 section 287.020; or

 (iii) Not a compensable injury, but such preexisting disability
 directly and significantly aggravates or accelerates the
 subsequent work-related injury and shall not include
 unrelated preexisting injuries or conditions that do not
 aggravate or accelerate the subsequent work-related injury;
 or

 (iv) A preexisting permanent partial disability of an extremity,
 loss of eyesight in one eye, or loss of hearing in one ear,
 when there is a subsequent compensable work-related injury
 as set forth in subparagraph b of the opposite extremity, loss
 of eyesight in the other eye, or loss of hearing in the other
 ear[.]

 § 287.220.3(2)(a)(i)-(iv). Second, the employee must show he “thereafter sustains
 a subsequent compensable work-related injury that, when combined with the
 preexisting disability . . . results in permanent total disability. . . .”
 § 287.220.3(2)(b). The “subsequent compensable work-related injury” is often
 referred to as the “primary injury.”

Treasurer v. Parker, 622 S.W.3d 178, 181 (Mo. banc 2021) (emphasis added).

 7
 Here, it is undisputed that Employee is permanently and totally disabled as defined under

Chapter 287 of the Revised Statutes of Missouri. Further, the Commission has credited

Dr. Hopkins’s expert medical opinion as to the medically documented preexisting disability

equaling a minimum of fifty weeks of permanent partial disability attributable to a work-related

injury as Dr. Hopkins’s attributed a total of 120 weeks of permanent partial disability to

Employee’s preexisting work-related medical condition of bilateral lower extremity injuries. And,

there is no dispute that Employee sustained a “subsequent compensable work-related injury” in

2015 (i.e., the last, or primary, injury) of bilateral upper extremity injuries in which 110 weeks of

permanent partial disability is attributable to this primary injury.

 Most importantly, however, is that the Commission concedes in its Final Award that

Dr. Hopkins’s expert medical opinion as to the cause of Employee’s PTD is one of two “likely”

causes and, consequently, the Commission also concludes that the Employee has thus presented

substantial evidence “to establish [Employee’s] theory of the case,” namely that “the combination

of employee’s preexisting [bilateral lower extremity] injuries and the primary injury [bilateral

upper extremity injuries] resulted in employee’s permanent and total disability.” Accepting this

conclusion of the Commission, this uncontroverted evidence3 constitutes substantial evidence

necessitating SIF liability for Employee’s PTD.

 3
 Employee argues that once this expert medical evidence on causation is presented by the Employee, it is
incumbent upon the SIF to present contrary expert medical testimony to rebut Employee’s expert medical evidence if
it chooses to contest Employee’s evidence. We disagree. As the finder of fact, we defer to the Commission on its
credibility determinations as to all witnesses, including expert medical testimony. Treasurer of the State of Mo. v.
Majors, 506 S.W.3d 348, 352 (Mo. App. W.D. 2016). And, “[t]he Commission, as the finder of fact, is free to believe
or disbelieve any evidence.” Id. (emphasis added) (internal quotation marks omitted). And, though the SIF did not
present any evidence in the administrative proceedings below, because the SIF was not the party bearing the burden
of proving SIF liability, it was not obligated to present evidence. For, where the Commission finds that any or all of
Employee’s evidence is not credible, this lends credence to the notion that “no evidence is needed to find against the
party who bore the burden of proof or to uphold that decision on appeal.” Beaman v. Lowe’s Home Ctrs., Inc., 601
S.W.3d 330, 331 (Mo. App. S.D. 2020); see also Michael v. Treasurer, 334 S.W.3d 654, 662 (Mo. App. S.D. 2011)
(stating that the SIF has no obligation to present conflicting evidence on an Employee’s claim for permanent and total
disability benefits, and, instead, it is Employee’s obligation to prove the Employee’s claim via credible evidence);
Dunn v. Treasurer of Mo., 272 S.W.3d 267, 275 (Mo. App. E.D. 2008) (stating the same). While it may be risky

 8
 Herein lies the defect in the Commission’s ultimate conclusion that, albeit Dr. Hopkins’s

testimony on causation is credible and a “likely” expert medical explanation for the cause of

Employee’s PTD, “[i]t was equally likely that employee’s preexisting injuries (without the

addition of the primary injury) resulted in employee’s permanent and total disability.” This

conclusion as to causation is unsupported by any expert medical testimony and is, instead, simply

the lay conclusion of two of three members of the Commission; accordingly, it is nothing more

than conjecture and speculation and cannot, as a matter of law, constitute substantial evidence to

support the Commission’s Final Award.

 Causation Determination Requires Expert Medical Testimony

 “‘The question of causation is one for medical testimony, without which a finding for [or

against] claimant would be based upon mere conjecture and speculation and not on substantial

evidence.’” Van Winkle v. Lewellens Pro. Cleaning, 258 S.W.3d 889, 897 (Mo. App. W.D. 2008)

(quoting Elliott v. Kansas City, Mo., Sch. Dist., 71 S.W.3d 652, 658 (Mo. App. W.D. 2002)).

“Accordingly, where expert medical testimony is presented, ‘logic and common sense,’ or an

ALJ’s [or the Commission’s] personal views of what is ‘unnatural,’ cannot provide a sufficient

basis to decide the causation question . . . .” Id. at 897-98.

 Though “we acknowledge that the Commission may decide a case ‘upon its disbelief of

uncontradicted and unimpeached testimony,’” Angus v. Second Injury Fund, 328 S.W.3d 294, 300

(Mo. App. W.D. 2010) (quoting Alexander v. D.L. Sitton Motor Lines, 851 S.W.2d 525, 527 (Mo.

banc 1993)), once the Commission has found uncontradicted and unimpeached expert medical

testimony to be credible, “‘[t]he Commission may not substitute [its] personal opinion on the

question of medical causation of [an injury] for the uncontradicted testimony of a qualified medical

strategy for the SIF to choose not to present evidence that is contrary to the evidence presented by the Employee (as
this case demonstrates), it is not obligatory for the SIF to present its own evidence in a workers’ compensation claim.

 9
expert.’” Id. (quoting Wright v. Sports Associated, Inc., 887 S.W.2d 596, 600 (Mo. banc 1994)

(overruled in part on other grounds by Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 224

app. (Mo. banc 2003))).

 Likewise, “[t]he Commission is free to choose between conflicting expert medical

opinions . . . .” ABB Power T & D Co. v. Kempker, 236 S.W.3d 43, 49 (Mo. App. W.D. 2007). In

that scenario, as we have said before, “when the evidence before the Commission would warrant

either of two opposed findings, [we are] bound by the [Commission’s] determination, and it is

irrelevant that there is supportive evidence for the contrary finding.” Majors, 506 S.W.3d at 352

(emphasis added) (internal quotation marks omitted). Here, however, there was only one credible

expert medical opinion on the issue of causation that could “warrant” a finding on causation—

namely, Dr. Hopkins’s testimony.

 In the present workers’ compensation claim, there is only one qualified expert medical

opinion on the issue of causation—Dr. Hopkins’s testimony that Employee’s qualified preexisting

medically documented disability (bilateral lower extremity disability), when combined with the

primary injury (bilateral upper extremity disability), has resulted in Employee’s PTD.

 Though the Commission could have adopted the ALJ’s finding that Dr. Hopkins’s expert

medical opinion on causation was not credible or believable, it expressly chose not to do so, stating

instead in its Final Award that “we disavow these findings” by the ALJ. In so doing, the

Commission credited the testimony of Dr. Hopkins and necessarily concluded that Dr. Hopkins’s

opinion on causation was “equally likely” as the Commission’s contrary conclusion—that

“employee’s preexisting injuries [alone] resulted in employee’s permanent and total disability.”

The Commission’s causation opinion is not, however, supported by any expert medical opinion

and is, instead, nothing more than the Commission’s personal opinion. Accordingly, the

 10
Commission’s Final Award on the issue of causation is not supported by sufficient competent

evidence to warrant the making of the Final Award and it must be reversed.

 Once it is determined that the Commission’s decision, as a matter of law, is not
 supported by sufficient competent evidence, an appellate court has discretion to
 modify, reverse or remand for rehearing, or set aside the Commission’s decision.
 § 287.495.1. Generally, when there is no sufficient competent evidence to support
 a particular finding, the appellate court reverses the Commission’s finding and
 remands the case for entry of an appropriate decision consistent with the evidence.
 In limited cases where the injury or ailment and the medical testimony appear to be
 in an unusual and rather obscure field where the parties did not have the opportunity
 to fully develop the evidence, the case will be remanded so that additional evidence
 may be produced on an issue if it is available. Here it appears both the employer
 and the employee had a full opportunity to develop and present such evidence as
 was available regarding medical causation of claimant’s condition. There is
 nothing unusual or obscure about cervical spine injury. No additional hearing on
 causation is required.

Wright, 887 S.W.2d at 600-01 (citations omitted) (internal quotation marks omitted).

 Similarly, here, because we have concluded that the Commission’s Final Award, as a

matter of law, is not supported by sufficient competent evidence, we reverse the Commission’s

Final Award as it relates to its finding on the issue of medical causation for Employee’s PTD.

Both the Employee and SIF had a full opportunity to develop and present such evidence as was

available regarding medical causation of Employee’s PTD. There is nothing unusual or obscure

about the lower and upper extremity medical conditions Employee suffers from; hence, no

additional hearing on medical causation is required. Instead, upon remand, the Commission is

directed to issue proper findings that as a consequence of Employee’s qualified preexisting injuries

to his lower extremities (120 weeks of permanent partial disability), when combined with his

primary injury (110 weeks of permanent partial disability), have resulted in a combination of which

that has rendered Employee permanently and totally disabled.

 Consistent with Wright, the Commission’s Final Award is reversed and the case remanded

to the Commission for entry of proper findings on the medical causation of Employee’s injuries as

 11
itemized above and consistent with the uncontradicted expert medical testimony and this opinion.

To the extent that there remain any other unresolved issues in Employee’s claim, they are for

determination by the Commission.

 /s/Mark D. Pfeiffer
 Mark D. Pfeiffer, Judge

Edward R. Ardini, Jr., Presiding Judge, and W. Douglas Thomson, Judge, concur.

 12